JOHN W. WHEATLEY, Appellant, v. CITY OF FAIRFIELD et al., Appellees.

No. 43024.

JANUARY 23, 1936.

Thoma & Thoma, for appellant.

Ralph H. Munro and James P. Starr, for appellees.

HAMILTON, J.—Plaintiff is the owner of a 357-acre farm in Jefferson county, Iowa. The city of Fairfield, Iowa, purchased and is the owner of a tract of land lying adjacent to and immediately south of plaintiff's farm. There is a meandering natural water course running from a northerly to a southerly direction across both of these tracts. A public highway running east and west separates the two tracts. The city purchased its land for the purpose of erecting a dam across the natural water course or gully for the creation of a reservoir to supply city water. This dam is located about 120 rods south of the south line of the plaintiff's farm. The dam was completed about April 1, 1925. The erection of this dam resulted in flooding about 20 acres of the plaintiff's land. There were negotiations of settlement between plaintiff and the defendant city, without results, which extended over a period of about four years. In February, 1929, plaintiff brought suit in equity, being cause No. 9242, in which he sets up the flooding of his land, the destruction of a valuable spring on his farm, and the destruction of a concrete bridge across this water course which he used in going from the portion of the farm on which his buildings are situated across to the east 104 acres of the farm which are cultivated, alleging that the dam had created a nuisance and had greatly damaged his farm, and praying for an injunction and for an abatement of the nuisance and for damages to the occupational or rental value of the farm of $1,000 a year for the four years since the erection of the dam, up to the time that suit was commenced. He later filed an amendment asking for an additional six months' occupational damage of $500, making the total amount of damage prayed for $4,500, and also prays for general equitable relief.

The city joined issue by answer. Before the case was reached for trial, the city, on July 10, 1929, commenced condemnation proceedings to condemn 18.43 acres of the plaintiff's land, being the flooded area. The avowed purpose is stated, ''to be used for and in connection with a storage reservoir for the city water works of said city.''

The plaintiff prepared and filed a claim for damages with the sheriff of the county; a sheriff's jury was selected to appraise the damages, resulting in an award of $34,310.83. The city, of course, appealed from this award to the district court, and on May 18, 1930, a petition, in which John W. Wheatley was named as plaintiff, and the City of Fairfield, Iowa, as defendant (in accordance with sections 7841, 7841-c1, Code 1931), was filed in the condemnation case, in which is reiterated the various elements of damages set up in the equity case and other additional allegations with reference to some items not mentioned in the equity case; to which petition the city duly filed answer. The condemnation case is known in the record as law No. 9344. The equity case and the condemnation case were, with the consent of the parties, consolidated by the lower court for the purpose of trial only, and tried to the court.

The evidence introduced related almost entirely to the question of damages to the farm as a whole. No evidence was introduced relating to rental or occupational damages, such as the depreciation in rental value of the farm from year to year. There was testimony with reference to all the different elements which might or could enter into the question of depreciation of the value of the farm before and after the dam was erected; but on the question as to the amount or measure of damage, the matter inquired about was confined entirely to the difference in the value of the farm before the dam was erected and the land flooded, and the value of the farm after; and although these cases were started four years after the dam was erected, the evidence, without objection, all related back to April 1, 1925, when the dam was erected, and the finding of the court as to the amount of the damage was fixed at $14,000, and the plaintiff was awarded that amount, with interest thereon at 6 per cent per annum from April 1, 1925. No judgment was entered in the condemnation suit, except for costs. This is in accordance with section 7842, Code 1931.

In the equity case a provisional injunction was granted, but no judgment for damages of any kind was found or entered of record, and there is no reference by the court in its decree in the equity case to any damages, except a reference to the award made by the court in the condemnation case. We will set out this decree in connection with our further consideration of this point later on in this opinion.

The defendant city appealed from the decision of the court in each and both of these cases, and on appeal the cases were consolidated and presented to this court together on the record made below. There was an affirmance of the judgments in both cases. The result may be found in the case of Wheatley v. City of Fairfield, 213 Iowa 1187, 240 N. W. 628, to which reference is made for a more extended statement of facts and the findings of the court below and in this court on appeal.

Thereafter, at the September, 1932, term of this court, the plaintiff filed a motion in the Supreme Court for taxation of attorney fees and costs, and for judgment on the supersedeas bond for the amount of the award. Upon hearing this motion was sustained, in so far as the costs are concerned, and judgment rendered upon the bond for the costs in both cases in the court below and in this court. In all other respects the motion was overruled.

Thereafter, on November 12, 1932, the plaintiff filed in the original equity suit, causé No. 9242, a motion for the issuance of a mandatory injunction and order requiring the sheriff of the county to remove the dam on defendant's land. This motion was heard in the district court of Jefferson county and decree entered therein on December 30, 1932, awarding the plaintiff the relief as prayed. The city petitioned this court for a writ of certiorari, which was granted. See case of City of Fairfield v. Dashiell, 217 Iowa 474, 475, 249 N. W. 236.

On September 6, 1932, a resolution was passed by the city council to the effect that the city "abandon the condemnation proceedings." It should also be stated that on April 21, 1932, the city council passed another resolution directing the city engineer to at once drain sufficient water out of the reservoir to avoid holding the water on the Wheatley land. This order was carried out by the engineer and the water lowered in the dam, so that very little water remained on plaintiff's land, except on the occasion of heavy rainfall. This lowering of the water was accomplished by means of two openings which were built into the dam at the time it was constructed. One is a sixteen-inch pipe, provided with a valve, which can be opened and closed, and the other is a twelve-inch pipe for connection with the city pump that can also be opened and used for draining out the water. Needless to say, these openings are insuffi-

cient to carry off the water from a large watershed of some 1800 acres in times of great precipitation.

On the 19th day of April, 1934, the case at bar was commenced by the plaintiff filing what he denominates "Petition for Writ of Mandamus, and Equitable Relief," in two counts. In Count One he sets up what he claims to be a judgment for $18,307.34, with interest at the rate of 6 per cent per annum from the 16th day of June, 1930, being the amount of the award, and praying that the city be required by mandamus to levy and collect a sufficient tax to pay said judgment, with interest and costs. In Count Two he asks for alternative relief, setting up the fact of this award and alleging that the same has never been paid, and also alleging that the attempted abandonment on the part of the city was not in fact an abandonment of the project, that the dam remained the same as it always had been, and praying for a judgment for the amount of the award, and also for occupational damages for the years 1925 to 1934, inclusive, which occupational damages are itemized as follows:

| | |
|---|---|
| Depreciation in rental value for six years, $1,000 per year, | $6,000.00 |
| Depreciation in rental value for the years 1931 to 1934, inclusive, $600 a year, | 2,400.00 |
| Destruction and loss of spring, | 1,500.00 |
| Damage to drainage system and cost of restoring same, | 1,000.00 |
| Attorney fees, | 5,000.00 |
| Damage by destruction of cement bridge across the water course, | 4,000.00 |
| And some additional damage to livestock which mired down in the mud | |
| Making a total claim of | $20,515.00 |

By way of answer the defendant city, in addition to general denial and specific denials, plead as matters of affirmative defense that plaintiff's damages, if any, were all adjudicated in cause No. 9242, equity, and plead further that his action is now barred by the statute of limitations.

The plaintiff, by way of reply, alleges that the occupational damages or depreciation in rental value for the years 1925 to 1930, inclusive, could not have been adjudicated in the trial

which occurred at the April, 1930, term of the district court in Jefferson county, and that the plaintiff's right of recovery therefor did not arise until after the determination of the condemnation case on final appeal and refusal thereafter by the city to pay the award as determined upon final appeal, and that as to the occupational use or rental value for the years 1931 to 1934, inclusive, the damage could not have been adjudicated in said equity case No. 9242, for the reason that the cause of action in favor of the plaintiff had not arisen at the time of the trial in the court below; the plaintiff contending that, in accordance with the language of the statute, Code section 7853, which provides,

"Should the applicant decline, on the final determination of the appeal, to take the property and pay the damages awarded, he shall pay, in addition to the costs and damages actually suffered by the landowner, reasonable attorney fees to be taxed by the court," his right to litigate the question of occupational damages did not accrue until after the city elected to reject the award.

■■■ The district court found and determined that no judgment for damages in favor of the plaintiff had been rendered in said equity case, and therefore the plaintiff had no judgment and no occasion for the writ of mandamus prayed for in Count One of his petition. That the lower court was correct in this we think is manifest from a reading of the judgment entry.

The original files in all of these previous cases were introduced in evidence as exhibits in this case. A perusal of the record entry by the trial judge, when the case was submitted, and the final judgment entry, both indicate that the only finding made in equity case No. 9242 was that the plaintiff was entitled to a provisional injunction. The decree or journal entry in cause No. 9242, in so far as is necessary to be set out herein for an understanding of the issues, is as follows:

"Now on this 16th day of June, 1930, the same being the 35th day of the regular April, 1930, term of the district court of Iowa in and for Jefferson county, comes on for record entry the above-entitled cause; said cause having been heretofore tried by this court upon the plaintiff's petition as amended, and the

defendant's answer thereto, and the determination thereof taken under advisement by this court.

"And now the court being fully advised in the premises, finds that the plaintiff is entitled to a conditional or provisional writ of injunction as follows:" (Here follows a statement to the effect that an award to the plaintiff in the condemnation case No. 9344 for damages in the sum of $18,307.34, plus interest, had been made in said condemnation case. That it appeared that the city had occupied and used the premises in question for waterworks purposes and had not paid the award.)

"It is therefore ordered, adjudged and decreed that the defendant city of Fairfield, Iowa, shall within four months from and after this date, pay to the plaintiff, John W. Wheatley, the amount of the award this day made by this court in favor of John W. Wheatley against the city of Fairfield, Iowa, in law action No. 9344, the same being $18,307.34, together with interest thereon at the rate of 6 per cent per annum from and after this date, or in the event the defendant city of Fairfield, Iowa, shall appeal the said award of this court in favor of John W. Wheatley and against the city of Fairfield, Iowa, to the Supreme Court of Iowa, then said city of Fairfield, Iowa, shall within four months from and after this date, file with the clerk of this court a supersedeas bond guaranteeing to the plaintiff, John W. Wheatley, the payment of the amount of said award made to said John W. Wheatley and against the city of Fairfield, Iowa, by this court this date or such amount as shall ultimately be determined to be due to the said John W. Wheatley by reason of the condemnation of said Wheatley's lands by the defendant city of Fairfield, Iowa, which bond shall be executed by proper surety to be approved by the clerk of this court.

"And it is further ordered that in the event the defendant city of Fairfield, Iowa, shall fail to pay said award or take an appeal to the Supreme Court of Iowa from the award made by this court in said law action No. 9344, and file bond as hereinbefore provided for within four months from and after this date, then a writ of injunction shall issue under the seal of this court restraining the city of Fairfield, Iowa, by and through all of its proper officers, from in any manner using or occupying for waterworks purposes, or any other purpose, the lands of plaintiff described as follows, to wit:" (Here follows the description of the land as described in the condemnation case.)

"And it is further ordered that the defendant city of Fairfield, Iowa, pay the costs of this action taxed at $11.75."

It can readily be seen that no attempt was made to enter a judgment for anything but a provisional injunction, and the court's action in denying the relief prayed for in Count One of plaintiff's petition must be sustained.

As to Count Two of plaintiff's petition, the trial court found that as to all damages for which claim is made in this action which occurred prior to the hearing in the court below in cause No. 9242, they were adjudicated or could have been adjudicated, and that the plea of res adjudicata as to all such damages must be sustained. This included every item of damage set up in Count Two of plaintiff's petition in the instant case, except those damages which have occurred or been sustained since the trial in May, 1930, and the court found the actual damage so sustained to be $900, and in addition thereto awarded the plaintiff attorney fees in the amount of $950, and entered judgment accordingly, and it is from the action of the court in reference to each and both counts of his petition that an appeal has been taken to this court by the plaintiff. It should be said that the decree below further provides:

" * * * that the defendant city of Fairfield, Iowa, and its officers, have no right to cause the water from the water works reservoir in question to back up on or flood plaintiff's lands and it is decreed that any future flooding of plaintiff's lands shall render the defendant city of Fairfield, Iowa, liable for all damages sustained by plaintiff by reason of any such flooding, and plaintiff shall have the right to recover for such separate items of damage as they are sustained."

It was also ordered that a writ of mandamus issue commanding the city, through its officers, to levy a tax sufficient to pay the judgment.

It is the contention of appellee city that all the matters relating to damages and abatement of the alleged nuisance set up in the second count of plaintiff's petition were involved in equity cause No. 9242, and that the decree in that case was a finality and concludes, bars, and estops the plaintiff from again litigating the same issues. That the decree in the former case was a final decree on the merits has once been determined by

this court. City of Fairfield v. Dashiell, 217 Iowa 474, 249 N. W. 236.

■■■ It is a well-established rule, of almost universal application, that a judgment, if rendered by a court of competent jurisdiction, on the merits, constitutes a complete bar and estoppel to a subsequent action between the same identical parties based upon the same claim or demand or cause of action. This is not only true with reference to matters in issue, but it is true as to all matters incident to or essentially connected with the subject of the action which might have been put in issue and adjudicated. This rule is so familiar it needs no citation of authorities to sustain it.

The doctrine of res judicata is based upon the principle that a party may not split or try his cause of action in piecemeal, but must put in issue and try his entire cause of action, or put forth his entire defense in the case on trial.

We quote from only a few of our many cases in support of this rule.

In Wolfinger, Adm'r, v. Betz et al., 66 Iowa 594, 24 N. W. 228, 230, this court said:

"It is a familiar rule that a party cannot relitigate matter which he could have set up in a prior action, but which he failed to do."

"An adjudication is final and conclusive, not only as to the matter *actually determined,* but as to every *other matter* which the parties might have litigated and have had decided, as incident to or essentially connected with the subject-matter of litigation." Stodghill v. C., B. & Q. R. Co., 53 Iowa 341, 346, 5 N. W. 495, 498. (Italics ours.)

It is said in Hahn v. Miller, 68 Iowa 745, 749, 28 N. W. 51, 53:

"The same evidence which would establish his right of recovery in this action would also have established his claim in the former cause, and the most infallible test as to whether a former judgment is a bar, is to inquire whether the same evidence will maintain both the present and the former action."

See, also, Hodge v. Shaw, 85 Iowa 137, 143, 52 N. W. 8, 10, 39 Am. St. Rep. 290, wherein it is said:

"It cannot be doubted that the action in 1881 was, in law, between the same parties, and in relation to substantially the same subject-matter. The former judgment not only concludes the parties as to the matters actually in issue and decided therein, but also as to all matters which they might have litigated. This is too well settled to need a citation of authorities. * * * The fact that the court in the former action found generally for the plaintiff, but only gave him a judgment for damages, was, in effect, an adjudication that he was entitled to no other relief. Freem. Judgm. section 272; Thompson v. McKay, 41 Cal. 221; Goodenow v. Litchfield, 59 Iowa 226, 9 N. W. 107, 13 N. W. 86. These matters which were or might have been pleaded in the former action must be now treated as adjudicated."

"Where there is a hearing, and no such words as 'without prejudice' appear in the decree, and no reason for dismissal is stated therein, and a decision on the merits is in no wise negatived, the issues raised are presumed to have been heard and decided on the merits." Black v. Miller, 158 Iowa 293, 298, 138 N. W. 535, 537.

Having attempted in his equity action to recover damages, it was incumbent upon plaintiff to bring forth all his claims for damages on account of the nuisance complained of. 34 C. J. 811, section 1228; Merrifield v. Clark, 199 Iowa 171, 201 N. W. 563.

Damages having been pleaded and that being the question at issue, the judgment of the court was conclusive as to all damages accrued at that time, including those in issue and also those which might have been put in issue. Oswalt v. Cronk, 195 Iowa 230, 235, 190 N. W. 162, 191 N. W. 978.

The rule is again stated in the case of City of Fairfield v. Dashiell, 217 Iowa 474, 481, 249 N. W. 236, 239, involving another branch of this same controversy:

"A decree is conclusive as to all questions and facts in issue or which might have been adjudicated."

See, also, Benedict v. Nielsen, 204 Iowa 1373, 215 N. W. 658; Rural Ind. School Dist. v. McCracken, 215 Iowa 55, 244 N. W. 711; Griffith v. Fields & Bryant, 105 Iowa 362, 75 N. W. 325; Perry Fry Co. v. Gould, 214 Iowa 983, 241 N. W. 666; King City v. Southern Surety Co., 212 Iowa 1230, 238 N. W.

93, 97. In this last case is found an extended excerpt, quoted with approval of this court, from the case of Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195, which makes a very important distinction in the application of the doctrine of res judicata in the following language:

" * * * there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, * * *." See, also, 34 C. J. 874, par. 1283.

Construing the rules laid down in the foregoing cases, and many others that might be cited, in the most favorable light possible to the plaintiff, when applied to the fact situation in this case, we can see no escape from the conclusion reached by the trial court. In the equity suit, cause No. 9242, plaintiff by his pleadings set up the same cause of action, based on the same facts for the years prior to the date of the suit in May, 1930, as is now set up and claimed in this cause of action. He not only asked for damages to the yearly rental value of the farm, but his petition contains a prayer for general equitable relief. Such a prayer is said to be "as broad as the powers of the court." Converse v. Deep River, 139 Iowa 732, 741, 117 N. W. 1078, 1081. Under this prayer, if there was proper evidence to sustain

the issues, the court might have rendered judgment for every item of damage that had been accrued, whether original or transitory, and likewise determined the matter of the abatement of the alleged nuisance. These issues were all controverted by the answer of the defendant city; therefore, they were all before the court when the case was "consolidated for trial" with the condemnation proceedings.

The consolidation for trial of the equity case with the condemnation case must have confused the issue in the minds of the parties, as well as the court. As a matter of fact, the equity case stood just as though no condemnation proceedings had been started, and the evidence introduced was to be considered as applicable to the issues made by the pleading in the equity case alone, and the court rendered the decision he did granting only a provisional injunction. His failure to render judgment for damages amounts to a finding that plaintiff was entitled to no damages. Plaintiff had a right to call the court's attention to any oversight or irregularity, or to appeal from the decree. He did neither. He had his day in court. "Equity aids the vigilant, not the slothful." Having properly presented his claim for damages to the court, he should have insisted on a proper decree and judgment; failing in this, an appeal would lie. No doubt had this matter been thought of and called to the attention of the court we would have a different record. It must be borne in mind that the burden in sustaining the claim for damages was on the plaintiff; upon him rested the burden of choosing the manner of proving up his case. No attempt was made to establish the amount of the damage to the rental or occupational use of the farm for the four years the water was upon the plaintiff's farm prior to the date of the institution of the condemnation proceedings. No evidence was introduced as to the original damage to the farm as a whole by reason of the erection of the dam and the consequences that resulted therefrom, which did not include in the estimate the taking of the land itself. Under the evidence all the finding for damages possible to be made was the award in the condemnation case. There was no way the court could have separated the damages to the farm because of the erection of the dam separate and apart from the taking of the land itself, and no way the court could have separated the damages to the occupational or rental value of the farm for the years prior to the

condemnation proceedings. It was not the defendant's prerogative or duty to point out any shortcomings in the proof; all the defendant was required to do was to refute the evidence introduced by the plaintiff. The plaintiff did not dismiss his equity case or withdraw any of the allegations contained in his petition, but permitted it to go to final judgment and decree.

In the case of Schmidt v. Zahensdorf, 30 Iowa 498, an action for the recovery of real property, Chief Justice Cole makes the following pronouncement:

"The plaintiff, in his petition, averred the facts constituting his right to, and made a claim against defendants for, use and occupation of the land in controversy, to the extent of $300. This claim was denied by the defendants. With the issue thus made, the cause was submitted to the court. The judgment entry recites that, 'there being no evidence offered by either party as to the value of the rents and profits, the same is not considered, and no judgment hereby rendered touching the same.' The action for the rents and profits was not dismissed, nor the claim therefor withdrawn. The defendants having been thus once compelled to litigate the question and prepare for their defense, they have a right to judicial immunity from being again required to answer the same claim. The judgment will be so modified as to make the same final against plaintiff's claim for the rents and profits."

It will thus be seen that even where the judgment itself recites that, "there being no evidence to support the issue, the same was not considered, and no judgment rendered touching that issue in dispute," the judgment was held to be a finality to the same extent as though the evidence had been introduced in support of the issue thus contained in the pleadings. See, also, case of Giddings v. Giddings, 70 Iowa 486, 30 N. W. 869, where the amount of the judgment was left blank, yet it was held to be an adjudication of the issue involved.

██ Plaintiff's contention that there was not a complete abandonment of the project, due to the fact that the dam is still standing, and his further contention that his cause of action did not accrue until after the abandonment and rejection of the award, are not well taken. The dam is not situated upon the plaintiff's land, but is 120 rods south of the south line of plaintiff's land. When the city abandoned the condemnation pro-

ceedings and ordered the water drained off of plaintiff's land, there was nothing else that could be done, in so far as the land sought to be taken is concerned. The rule is well stated in Robertson v. Hartenbower, 120 Iowa 410, at page 412, 94 N. W. 857, 858, cited by the appellant, which reads as follows:

"But the abandonment contemplated by the statute, and by the authorities which we have been able to examine, is an abandonment in good faith of the entire proceedings and of the land for the purpose for which it was sought. In other words, it must be a complete surrender of the project so far as the land involved is concerned."

And when the city abandoned the condemnation proceedings by resolution, it thereby gave up any attempt to appropriate any part of plaintiff's land, and the matter then stood just as in the beginning before the proceedings for condemnation were started. This, we think, is a complete abandonment of the project in so far as plaintiff's land is concerned. The only penalty inflicted upon the city by virtue of the statute is that it shall pay, in addition to the costs and damages actually suffered, a reasonable attorney's fee. Code 1931, section 7853.

■■■ Up until the institution of the condemnation proceedings the defendant city was a mere trespasser on the plaintiff's land and was liable to the plaintiff in damages caused by the flooding of his farm by the water that was backed up and over a portion of his farm, which could be recovered from year to year as the damage occurred, or in one lump sum, depending on the question of whether the damages were what is known in the law as "original" damages to the farm itself, or whether they were occupational damages which occurred from year to year, or at transitory intervals, and for which a separate action may be maintained as often as the damages may occur, for all of which a right of action had accrued to the plaintiff before the condemnation proceedings were even commenced. And as to all these the statute of limitations (Code 1931, section 11007) had already run when this action was commenced.

As to the amount of damage to the occupational or rental value of the farm for the three years subsequent to the hearing in the lower court in May, 1930, for which the court allowed $300 per year, or $900, we find it is a matter difficult of determination under the evidence. There is a wide variance in the

testimony of the witnesses on this subject. The evidence shows that the rental value of real estate for the years covered has not been high, as compared with prior years. We have given the matter careful consideration and are not disposed to disturb the finding of the lower court in reference to this matter.

■■■ The defendant city of Fairfield served notice of cross-appeal, appealing from that part of the finding of the trial court allowing attorney fees as a part of the damages to which the plaintiff-appellant was entitled to recover. It is the contention of the city that the appellant was not entitled to attorney fees in any amount, because there was no evidence that he had paid any attorney fees, or that any attorney fees had accrued for which he would be liable. The record does not bear out appellee's contention in this regard. The evidence with reference to this subject was that of the plaintiff-appellant himself, and Mr. Roscoe Thoma, one of the firm of Thoma & Thoma, attorneys for appellant. The plaintiff testified that nothing was said about attorney fees until after the award was made by the district court, and he then talked to the attorneys and they told him that their attorney fees would be a sum equal to twenty-five per cent of the award. This amount was evidently fixed on the theory that the award would be paid, and the testimony offered by the appellant as to the value of the services rendered was on the basis of quantum meruit or reasonable value of services rendered. The trial judge was much better situated to pass on the question of the reasonable value of the services rendered in that particular locality than are we. The district court allowed $600 for the appeal from the sheriff's jury to the district court, and $350 for the appeal from the district court to the Supreme Court. As to the amount of these fees appellee makes no complaint, its only contention being that there is no liability to pay attorney fees, and it strenuously contends that as to the attorney fees on appeal from the district court to the Supreme Court there is no provision of the statute for the allowance of attorney fees, and therefore as to these the judgment of the court is erroneous.

It is true that language is found in the case of Mellichar v. Iowa City, 116 Iowa 390, 90 N. W. 86, in referring to the attorney fees to be allowed by the district court on appeal from the sheriff's jury, which would indicate that the court is limited in taxing attorney fees for services rendered on appeal from

the findings of the sheriff's jury, and as stated in the case of Iowa Electric Co. v. Scott, 206 Iowa 1217, at page 1222, 220 N. W. 333, attorney fees under the rule in this state are not taxable as costs in the case, in the absence of statute.

In this case the plaintiff is not asking for attorney fees to be taxed as a part of the costs, but is asking for attorney fees as a part of the damages actually suffered by him in protecting his rights as the landowner in the condemnation proceedings. Had the condemnor abandoned the award before the appeal was taken to the Supreme Court, then, of course, under the plain provisions of the statute the district court might have taxed as a part of the costs in the case reasonable attorney fees for services rendered in the appeal from the sheriff's jury; but the city did not see fit to abandon the award in this case until after it had taken an appeal to the Supreme Court, and the Supreme Court had affirmed the award. It was necessary that the landowner follow up this appeal and protect his rights and employ an attorney to do so. We think the reasonable value of the services was a part of the actual damages suffered by the landowner and covered by the statute, which provides that the landowner may recover the costs and damages actually suffered. If the condemnor may abandon his condemnation proceedings at any time, even after the Supreme Court has ruled adversely to him—and it seems from the holding of our court in the Iowa Electric Company case that he may dismiss his condemnation proceedings at any time, and this is the rule laid down by the United States Supreme Court also—we think it must follow that there was no error in allowing attorney fees for services on the appeal to the Supreme Court as a part of the damages in this case.

Appellant filed a motion to dismiss appellee's cross-appeal because he filed no abstract. It is not necessary for the appellee to file a separate duplicate abstract of the record. Watrous v. Watrous, 180 Iowa 884, at page 910, 163 N. W. 439.

It necessarily follows that the case is affirmed on both appeals.

Thus, another chapter has been written in this unfortunate situation, affording a very forceful illustration of how matters of this kind should not be handled. This case had its beginning in an act of high-handed, impertinent, ruthless violation of constitutional and sacred proprietary rights in one's own

property. A continuous course of litigation, with parties at loggerheads, apparently has reached a status where even a court of chancery is powerless to extricate the parties from the tangled web, or to render a decree that will be satisfactory to either side, or mete out even-handed justice. The city has had its try at condemnation and has refused to pay the appraisal value, finally abandoned the same, and has permitted this last opportunity to fully utilize the full value of the expensive dam to go by, greatly lessening the capacity of its reservoir; not only this, but the city is faced with ever-recurring litigation caused by backwater after each spring freshet or heavy rainfall throughout the year. On the other hand, the plaintiff is receiving small recompense for the willful trespass upon his farm and the long-continued litigation through which all parties concerned have dragged themselves. Having thus exhausted themselves in calling upon the fair goddess who holds in her hands the scales of justice, may we not hope that they will look candidly at the problem with which they are faced and with fairness between man and man attempt to solve it amicably among themselves?—Affirmed.

DONEGAN, C. J., and PARSONS, ALBERT, and RICHARDS, JJ., concur.

POWERS, MITCHELL, and ANDERSON, JJ., dissent.