H. M. LAKIN, Appellant, v. CLARA KALLEM EITTREIM et al., Appellees; WILLIAM THOMPSON and RAYMOND A. THOMPSON, Intervenors, Appellees.

No. 44850.

JANUARY 9, 1940.

R. G. Remley and Lundy, Butler & Lundy, for appellant.

Burnstedt & Hemingway, for appellees.

HALE, J.—In case No. 15152 in the Hamilton county district court, judgment was rendered in favor of the plaintiff and against the defendant Edwin J. Kallem, aided by an attachment against real estate, which was continued in force. Thereafter plaintiff brought action No. 15280 to set aside a conveyance made by the said Edwin J. Kallem and his brother Alvin B. Kallem to Clara Kallem Eittreim and Anna Kallem Carlson. By agreement the cases were consolidated. The order of consolidation was as follows:

"It is agreed by the parties and ordered by the Court that this cause is consolidated for trial with issues raised by the Petition of Intervention of William and Raymond A. Thompson, in Case No. 15152, and that such consolidated trial be had in equity on Sept. 19, 1938, at 9:00 A. M."

Decree was rendered in favor of the defendants, dismissing the petition of intervention of William Thompson and Raymond A. Thompson, who claimed to have bought the land; finding that Edwin J. Kallem had only a one-seventh interest in the real estate, subject to later adjudication; and other findings and orders hereinafter referred to.

The father of the defendants died in 1912, intestate, survived by his widow Mary O. Kallem, and children—Randolph Kallem, Alvin B. Kallem, Edwin J. Kallem, Theodore N. Kallem, Anna Kallem (now Anna Carlson), Ida Kallem (now Ida Sanford), and Clara Kallem (now Clara Eittreim). At the time of his death he was the owner of two tracts of land, one of 174 or 175 acres, and another tract of land containing about 115 acres. One son, Randolph, had married and moved away, but the rest of the family remained on the farm until 1917, when the mother and daughter Clara moved to town. Clara and Anna have since continued to care for and support the mother. Alvin, Edwin, and Theodore continued to farm the land until 1919, and Edwin and Alvin farmed the home place in 1919 and 1920. In 1920 the lands were sold at public auction. The 175-acre tract was purchased by Edwin and Alvin at a very high price, and the 115-acre tract was bid in by Anna and Theodore, who immediately sold the land to the Ringstads. No cash was paid for the land purchased by Edwin and Alvin, nor was any deed made at the time of sale. These two sons had previously bought a farm, called the Bourne farm, which was incumbered by a mortgage.

Foreclosure of the Bourne tract was started late in 1921. Fearing a deficiency judgment, an arrangement was made by which a deed was given to Alvin and Edwin for the home place (the 175-acre tract), and they gave a note and mortgage to their mother, no part of which was ever paid, and admittedly to make the indebtedness so large that it would discourage the Bournes from attempting to enforce any deficiency judgment. This mortgage was later released. However, the land was deeded back in

1923 to the Bournes. The two sons continued to farm the land most of the time until the year 1929, and later, the plaintiff knowing that they were paying rent during that period. The fact is, however, that very little rent was paid by them, although a dividend from the estate was held back to offset part of the rent. Alvin died in 1933. For some time previous to October 1931, there was some complaint about the other heirs getting so little from the rent of the farm, and it was suggested that Edwin and Alvin should deed the land to the two sisters. This was done on October 9, 1931. At the time there were taxes and interest unpaid; there was a mortgage on 120 acres of $9,500 and on the fractional 55 acres of $3,000. The deed was made to Anna Carlson and Clara Eittreim, and a contract was given back providing that when the land was sold the debts owed by Randolph, Edwin, and Alvin should be deducted from their respective shares, and if they had any balance due after their debts were paid they should receive it. It appears that Lakin, the plaintiff, knew about the deed and agreement shortly after they were made. The 115-acre tract was deeded back by the purchaser to Mary O. Kallem, but it was heavily incumbered.

The note on which the plaintiff secured judgment was given in 1920, signed by both Edwin and Alvin and their mother, Mary O. Kallem, but was afterwards renewed.

Judgment was rendered in the first case on May 25, 1938. The petition alleges fraud, and the attachment was directed to remain unimpaired so that the plaintiff might bring suit to set aside the transfer. An answer was filed in that proceeding, denying fraud, alleging the execution of the deed in 1931, laches of the plaintiff, and the bar of the statute of limitations. There was also filed the petition of intervention of William and Raymond A. Thompson, claiming ownership by contract from Clara and Anna, and also alleging laches and the bar of the statute. The Thompsons paid $2,000 by check at the time of the contract for the sale on January 14, 1938, and deed was afterwards executed. Following judgment in the first case (No. 15152) the plaintiff's petition was filed in No. 15280, asking that the deed to the defendants Clara and Anna be set aside and that the real estate be subjected to plaintiff's judgment; alleging no consideration; alleging that Edwin J. Kallem is the real owner

of the real estate, and conspiracy in making such transfer, for the purpose of hindering, delaying, and defrauding Edwin's creditors; and alleging the insolvency of Edwin and a conspiracy to defraud. By answer this was denied by the defendants, who set up the delivery of the warranty deed; claimed the bar of the statute, lack of diligence on the part of the plaintiff, and the sale of the land to the Thompsons. The Thompsons were not made parties to the second suit.

The contract executed at the same time as the deed is in substance as follows: It first sets out that E. J. and A. B. Kallem are the owners of the land in controversy, subject to mortgages of $9,500 and $3,000; that the interest is delinquent and taxes are unpaid; the increase of the mortgage indebtedness on the property and the receipt by the three brothers of the amount of the increase. It refers to the deed that had been made, and provides that if the land is sold there shall be deducted any advancements that have been made by Anna and Clara. It provides for the disposition of the rents and for the final settlement and the deduction of indebtedness of the seven members of the family, as well as the payment of advances made by them, and states that each of the children shall receive a one-seventh interest in the balance, if there is any balance, subject to deduction from such share of the amount he or she may owe the estate because of advancements received. This contract was signed by Anna Carlson and Clara Eittreim.

The decree heretofore referred to, dated September 22, 1938, recites the recovery of judgment; states that the deed dated October 9, 1931, conveyed merely the legal title; that such conveyance, together with the written contract executed contemporaneously established and placed the premises in trust in the name of the grantees for the benefit of the seven heirs, naming them, each having a one-seventh interest subject to any indebtedness owing or advances received, if any, by any of them. The decree does not determine the amounts due or owing by Edwin and finds that it is not necessary to set aside the deed to protect the rights of the plaintiff; holds that the defense of laches does not apply since the court finds that the plaintiff went in time to the attorney for the defendants to commence his suit, but was dissuaded; that the Thompsons had sufficient notice in time to protect their rights in the $2,000 down payment, and dismisses

as to them; continues the cause for settlement of the accounts among the heirs, and authorizes the sale to the Thompsons to go through, if with the consent of the plaintiff, and proceeds to be held in lieu of the land.

From this decree the plaintiff appeals.

The plaintiff's principal claim is that the conveyance to the two sisters was voluntary and without consideration and fraudulent.

Edwin, called as a witness for the plaintiff and who appears to have been a friendly witness, stated in his testimony that the reason for entering into the arrangement on October 9, 1931, was that he was indebted to the Ellsworth Bank in about the sum of $2,900, and was afraid of a judgment; that there was no other object in making these papers than to protect the land against judgments against Edwin and Alvin. So far as Edwin's indebtedness to the bank was concerned, it appears that it was afterwards settled, about or after the time of Alvin's death in 1933. The reason assigned by Clara, however, in which she was supported by the testimony of Theodore, was that the sons were unable to carry the load of taxes and indebtedness and wanted the two grantees to take the land. It is a fact that the deed and the so-called contract were made at the same time, but the contract was never placed of record, and, according to Clara, was intended to be an arrangement among the heirs themselves.

Clara was the moving spirit in making the arrangement. One of the grounds urged as a reason for setting the deed aside was that the conveyance was made in fraud of creditors, but Clara in her testimony insists that Edwin's indebtedness to the bank was not known to her, and we are inclined to believe that this is true. She did not know of the Lakin indebtedness, but the deed was made for the protection of the daughters' claims for indebtedness due them from the two sons, and, if in good faith and in the absence of fraud or intent to defraud, they had a right so to protect themselves. So far as the plaintiff, Lakin, is concerned, the arrangement was known to him, and that immediately after the transaction. This was stated by Edwin in his testimony and is not denied. Such could hardly be called a secret trust, since the only party who could claim any injury to himself had knowledge, and knew the circumstances of the transfer to the sons in 1922 and the conditions under which they

held the land. This deed in 1931 was merely a reconveyance which transferred the property to the parties entitled thereto. As to the heirs, the transaction was fair and just, and, as one of the brothers states in his testimony, the boys had had the advantage theretofore and there seemed to be a general agreement that the rights of the various parties ought to be adjusted. The mother was not a party to the transaction. She had previously taken the 115-acre tract as her share of the estate by the general consent of all the parties interested. This had been the understanding ever since 1922, when the Ringstads deeded back the land. Since that time she had made no claim of any interest in the 174 acres. The conveyance to the daughters was approved by Edwin, who felt that Anna was entitled to compensation for taking care of her mother, and testified that he had so stated.

Under the previous arrangement also it seems that, while the legal title was vested in Edwin and Alvin, they recognized, so far as the other heirs were concerned, that such heirs had an interest. They occupied the land as tenants and acknowledged their obligation to pay rents. Alvin and Edwin thus continued to farm, more in the capacity of tenants than owners. Some cash rent was paid, and grain rent, although not all which they had contracted to pay, and all this notwithstanding the deed by which they held the record title and the mortgage which had been given. And of this manner of conducting the farm and the payments of rent the plaintiff knew, for he himself had purchased grain from them and had been informed that the boys were paying rent on the land to the other heirs. When the purchase of grain was made by him the check was given to the Kallem estate. So far as the parties themselves are concerned with the understanding and arrangement under which Edwin and Alvin held the land, there was no denial of the right of the other five heirs to a share in the 174 acres.

It is insisted by the plaintiff that the transaction of October 9, 1931, was a secret trust, but the evidence of plaintiff's witness, Edwin, is to the effect that plaintiff knew about it and it was all right with him. In answer to the question:

"You didn't want him to be in the dark about what you were doing?" the answer was: "No, sir."

"Q. Did he make any objection to it? A. He did not.

"Q. Did you tell him before you had made the deed or just afterwards? A. Just afterwards."

Later, on cross-examination, he said:

"I imagine I told him."

However, the witness was very clear and definite, not only that he had informed Lakin, but that Lakin knew of it and made no objection. It appears from the evidence that Lakin not only had full knowledge of the deed but of the contract.

Considering all the facts and circumstances connected with the transaction, we believe the findings and decree of the district court were right. We find that, not only was there no fraudulent intent on the part of the grantees in the deed but that the whole transaction was not fraudulent as against creditors. If, as suggested by plaintiff, the burden was on the defendants, we think they have sustained that burden. Other matters discussed by counsel we do not find necessary to consider.

A motion to dismiss the appeal was filed by defendants. We are disposed to consider the case on the facts, and in view of our holding we find no necessity of a ruling on the motion.

The decree of the district court is affirmed.—Affirmed.

HAMILTON, C. J., and BLISS, MILLER, OLIVER, MITCHELL, SAGER, and STIGER, JJ., concur.