THEODORE N. KALLEM et al., Appellants, and IDA C. SANFORD, Appellee, v. EDWIN J. KALLEM et al., Appellees.

H. M. LAKIN, Appellee, v. CLARA KALLEM EITTREIM et al., Appellants; IDA C. SANFORD et al., Appellees.

No. 45323.

JANUARY 14, 1941.

Burnstedt, Hemingway & Hemingway, Edward L. O'Connor, and Tolbert C. Moore, for appellants.

R. G. Remley and Lundy, Butler & Lundy, for H. M. Lakin, appellee.

Lee & Walsh, for the Thompsons.

BLISS, J.—The tangled transactions involved in this litigation are sequences of the farm-land boom of 1919 and 1920. One phase of the litigation was passed upon by this court in the case of Lakin v. Clara Kallem Eittreim, Anna Kallem Carlson, and Edwin J. Kallem, 227 Iowa 882, 289 N. W. 433. This was equity cause No. 15280 in the court below. Decree therein was affirmed on the plaintiff's appeal. Appellants, in the appeal now before us, insist that the judgment in the other cause demands a reversal in this cause. While the factual history is quite fully set out in our earlier opinion, some repetition is necessary for a clearer understanding of the issues here involved.

Thomas R. Kallem died intestate in 1912, the owner of 290 acres of farm land in Hamilton county, subject to a mortgage of $6,500. He was survived by his widow, Mary O. Kallem, and seven children, Randolph, Edwin, Alvin, Theodore, Ida, Anna and Clara. There was never any administration of the estate. All of the children lived at home when the father died, except Randolph, who had married and left home. The mother and the other children lived on the farm until 1917, when she and Clara moved to town. Alvin, Edwin and Theodore operated the farm until 1919, and Alvin and Edwin farmed it in 1919 and 1920. Throughout the record, the farm is referred to as of two parts. One of which is called the "home place," containing 175 acres, made up of a 120-acre tract and a 55-acre tract. The other part of the farm had no buildings, and contained 115 acres, made up of a 40-acre tract, and a 75-acre tract. On June 25, 1915, the $6,500 mortgage placed by the father on the 120-acre tract of the "home place," was increased to $9,500, and Randolph received the $3,000 increase.

In 1919, Edwin and Alvin bought the Bourne quarter section at a price of $290 an acre. They paid $10,000 in cash and contracted a mortgage encumbrance on the land. They borrowed $3,500 of the $10,000 down payment from Georgia Lakin, the wife of H. M. Lakin, appellee herein. Edwin and Alvin, and their mother, Mary O. Kallem, signed a note for the $3,500, the maturity of which is not shown by the record.

In September 1920, both parts of the Kallem estate farm were sold at public auction. The home place of 175 acres was bid

in by Edwin and Alvin, at a price of $490 an acre for the 55-acre tract, and $410 an acre for the 120-acre tract. The sale was for a March 1, 1921, settlement, although no written contract of purchase appears to have been executed. Just what the down payment was to be, or was, is not definitely disclosed, but, the day following the sale, Edwin and Alvin went to the bank and executed their note therefor. Neither its amount nor its payee definitely appears. No cash was paid by them then, and the note was never paid. It was deposited in the Kallem estate bank box, and years afterward was destroyed by Edwin. No other written instruments were executed to evidence or consummate the sale, at the time thereof, or in the year following.

At the same public auction, the other part of the farm; the 115 acres, was sold to Anna and Theodore, at a price of $310 or $320 an acre, and the next day they resold to the Ringsteds at a $10 an acre rise in price, which profit Theodore appropriated. Deeds conveying the 40-acre tract to J. O. Ringsted, and the 75-acre tract to O. M. Ringsted, were executed by Mary O. Kallem and the children on April 21, 1921. The purchasers, respectively, placed mortgages of $3,000 and $7,000 on the tracts, and the $10,000 with $4,000 added were paid to the Kallem children—$2,000 each to six of them and $1,500 to Anna—the balance went for commission and sale expense. The mother received nothing. The land boom had broken. The Ringsteds became dissatisfied with the purchase, and through negotiations with Theodore and Randolph, the land, encumbered by the $10,-000 mortgages, was conveyed back by deeds to Mary O. Kallem, without her knowledge at the time, which were filed for record April 24, 1922.

Edwin and Alvin had failed to pay the interest on the mortgage encumbrance on the Bourne 160 acres which they had purchased, and the petition in a suit on about an $8,000 or $9,000 note and mortgage was filed against them on January 7, 1922, by the Bournes. The boys were fearful of a deficiency judgment which might become a lien on their land interest in the Kallem estate. Together with their brother Randolph, they consulted a lawyer in September 1922, and a plan was evolved by which a deed was to be executed by Mary O. Kallem and the other five children, conveying the 175-acre home place to Edwin

and Alvin, who were to execute a mortgage back large enough to convince the Bournes that there would be no equity which might be subjected to any judgment they might obtain. In keeping with this plan, the mortgage was fixed at $38,200, with the mother, alone, named as mortgagee. It stated the maturity of the secured indebtedness to be October 1, 1927. No part of the principal sum or the interest thereon was ever paid. The consideration in the deed was recited as $56,500. There was testimony that the execution of these papers was but a belated consummation of the auction sale. There was also testimony to the contrary. The boys Randolph and Edwin testified that the consideration of $56,500 had no basis in fact. The appellants argue that it was the auction price with the shares of the two boys deducted. But with the mother's interest and the original mortgage encumbrance of $9,500 to be considered, it is difficult to reconcile the figure. The deed bears date of September 22, 1922, and was executed by all of the grantors during that month, and the deed and the mortgage were both recorded on October 2, 1922. Clara, Ida and Theodore said they had objected to signing the deed until assured by Randolph and Edwin that the consideration named in the deed of $56,000 or $56,500 would be secured by a mortgage. No such mortgage was ever executed, so far as the record shows.

In the fall of 1922, about September or October, the mother and the children had a reunion at the home of Theodore. Edwin and Randolph claim they were not present, but this is disputed. At this time, the mother was first informed that the 115 acres had been conveyed to her by the Ringsteds. There is testimony that she was then told that she might accept the same, subject to the $10,000 mortgage encumbrance as her share of the estate, and that the children were to take the 175 acres, or as some say the claimed $56,000 mortgage, as their part of the estate. There is testimony that such an arrangement was agreed upon, and while there is testimony to the contrary, the conduct of all of them thereafter gives strong support to such an arrangement.

Mary O. Kallem executed a partial release, bearing date of March 31, 1923, filed June 19, 1923, of the $38,200 mortgage, insofar as it covered the 55 acres of the home place, and

Edwin and Alvin executed a mortgage on the same land to the Crosley Investment Co., for $3,000, dated April 6, 1923, and recorded April 11, 1923. Of the money so raised, $2,000 was used by Edwin and Alvin to settle the Bourne suit, and $1,000 was taken by Randolph.

Edwin farmed all of the Kallem land from 1925 to 1929. He paid no cash rent, but the proceeds of half the crops went into the "Kallem Estate Account" in the bank. It was used to pay interest, taxes and to make repairs. The girls complained of receiving nothing off of the land and in 1925 another family reunion was held. It was there decided that Archie Sanford, the husband of Ida, should collect and pay out the rents. He did this from October 1925 to March 1929. In 1928, he distributed $250 to each of the children excepting Edwin. During the next two or three years, Edwin and Alvin, either singly or together, operated the farm. Complaints were made by the mortgage holders of delinquencies in the payments of interest and taxes. Another reunion was held in October 1931. Edwin and Alvin were individually indebted to an Ellsworth bank in the aggregate sum of $2,900. This indebtedness was later settled for $600. Some of the children went to consult the same lawyer who had advised them when the deed and mortgage of September 1922 were executed. As a result of this meeting on October 9, 1931, Edwin and Alvin and their wives, for $1.00 and other valuable consideration, executed a warranty deed conveying the 175 acres to the sisters, Clara (Kallem) Eittreim and Anna (Kallem) Carlson, which deed was recorded October 22, 1931. At the same time, the sisters executed a written contract, which recited that Edwin and Alvin had held the record title, subject to the $12,500 mortgage encumbrance, for the benefit of themselves and their brothers and sisters; that the taxes and interest had become delinquent, and it was necessary to raise additional money to pay them; that Anna and Clara therefore accepted the conveyance subject to the encumbrance; that rents should all be applied on the interest, taxes and upkeep, and any contributions for those purposes by any of the children should be credited to the contributor with interest; that the only members of the family interested in the property were the children, in equal shares, subject to any charges against or credits to any child;

that Randolph had received $4,000, and in the event of a sale, he was to receive nothing unless his one-seventh interest exceeded that sum. The contract does not mention the $38,200 mortgage. The children received copies of the contract but it was not placed on record. Lakin, the appellee, and his wife knew of this deed to the girls, and Edwin testified that he explained the reason for the transfer, and told appellee of the terms of the contract. Lakin testified that the boys told him the property was still in the Kallem estate, and that he did not know of the contract of October 1931 until September 1938, Mrs. Lakin, when urged by her banker to sue on her note because of the transfer, stated that she knew Edwin and Alvin would pay her.

No part of the principal of her $3,500 note had ever been paid, and but a small part of the interest. The unpaid interest was waived, and on April 1, 1930, a new note for $3,500, due in two years was executed by the three original signers, the mother, Edwin and Alvin.

Alvin died in 1933 leaving his wife, Ruth, and five minor children surviving. Sometime in 1934, Lakin, who was attending to his wife's business affairs, consulted his legal adviser of many years, about suing on the note. The adviser was also the lawyer who had advised the Kallems, as herein set out, although Lakin testified that he did not know this. He said the lawyer told him that "I don't believe if I were you I would do anything like that now." He accepted this advice.

On January 14, 1938, Clara and Anna sold the 175 acres by written contract to the Thompsons, and on January 27, 1938, they delivered their check of $2,000 as a down payment to Rorem, the agent of the vendors, in escrow, who held it in his bank and did not deposit it to the credit of the vendors until March 23, 1938.

Lakin acquired the $3,500 note from his wife in January or February 1938, and on February 11, 1938, filed his petition at law (cause No. 15152 below) thereon against Edwin, Alvin and Mary O. Kallem, asking judgment against Edwin and a writ of attachment against the 175 acres, based upon fraud. Levy was made on the interests of Edwin and his mother. There was no personal service on Mary O. Kallem in this state. Judg-

ment for $5,906.31 was entered against Edwin. The Thompsons had intervened denying the alleged fraudulent transfer of October 9, 1931. The attachment was retained unimpaired pending suit by the plaintiff to set aside the said fraudulent transfer.

Petition in that suit (cause No. 15280 below) was filed by Lakin on September 2, 1938, against Clara, Anna and Edwin. The mother was not made a party defendant, as she had been in No. 15152. Plaintiff alleged the nature of that action, and the resulting judgment. He also alleged that Edwin was in fact the owner of the 175 acres, and that he conspired with the grantees in the deed of October 9, 1931, to execute it with intent to hinder, delay and defraud his creditors, including Georgia and H. M. Lakin, and he prayed that the transfer be set aside and the real estate subjected to the plaintiff's judgment ahead of the grantees' interests. The defendants denied generally and alleged the bar of the statute of limitations and laches. The Thompsons, who had purchased the land, intervened against the plaintiff. The court consolidated the suit for trial with the undetermined issues of No. 15152. The court decided the case on the merits and refused to set aside the deed of October 9th, and found and decreed that it merely conveyed the legal title and that the deed and the contemporaneous contract together established and placed the land in trust in the name of the grantees for the benefit of all of the seven children, each having a seventh interest therein, subject to any changes or credits, which latter items were left unadjudicated. Lakin was held entitled to the interest of Edwin in the trust up to the amount of his judgment, and he was given the right to permit the performance of the Thompson contract. He later served notice of rescission upon the Thompsons. The judgment just referred to was affirmed by this court (Lakin v. Eittreim, 227 Iowa 882, 289 N. W. 433, supra).

The first action (No. 15309), of the two involved in this appeal, is for the partition of the 175 acres, by sale or by the consummation of the Thompson sale. The plaintiffs are Theodore and the three girls, and the defendants are Randolph, Edwin, the widow and children of Alvin, and H. M. Lakin, and the Thompsons. The petition alleges the execution of the deed of September 22, 1922, for an alleged consideration of $56,500, no part of

which was ever paid, and that Edwin and Alvin held the legal title until October 9, 1931. Plaintiffs therein concede that Lakin, by virtue of his judgment, is entitled to the share of Edwin.

Lakin filed answer, December 9, 1938. Therein he admits the execution and recording of the deed of September 22, 1922, and that the consideration therein was never paid; admits the execution of the deed and contract of October 9, 1931, and the recording of the deed. In division II of his answer, Lakin alleges: That the mortgage of September 22, 1922, for $38,200, and duly recorded, was in apparent full force and effect until released of record on February 21, 1938; that said deed and mortgage of September 22, 1922, and the deed and contract of October 9, 1931, and the deed to the Thompsons, were each executed to defraud creditors, and particularly, Lakin, and the said instruments of 1922 and 1931 were fictitious; the inception and renewal of the $3,500 note upon which he obtained judgment; the fact that he was misled by the attorney he consulted; that neither Georgia Lakin nor he learned of any of the alleged fraudulent or misleading acts until September 1938. By an amendment to their petition, the plaintiffs allege the bringing of causes No. 15152 and No. 15280, and the issues therein, and that Lakin is estopped by the judgment therein of September 22, 1938, upholding the deed and contract of October 9, 1931, as valid and binding against Lakin. In their reply, plaintiffs reallege the defense of estoppel, and allege the bar of the statute of limitations, and of laches.

On December 9, 1938, Lakin filed his petition in cause No. 15340, before us on this appeal. He names as defendants all of the parties to cause No. 15309 and some additional, including Mary O. Kallem. He alleges the execution of his $3,500 note, and his action thereon (No. 15152) against Mary O. Kallem, and the attachment of the 175 acres. He sets out in substance and with greater particularity, and with additions, the allegations of his answer in cause No. 15309, and prays the establishment of his claim against the 175 acres. On January 20, 1939, he filed an amendment to his petition alleging that on that day a judgment by confession, by Mary O. Kallem, for the amount due on the note was entered in the Hamilton county district court. Mary O. Kallem was 87 years old at the time of the trial,

and was bedfast at the home of her daughter Anna, in Illinois. Anna had largely borne the burden of her care and support for many years.

The Thompsons by answer and cross-petition asked to have the sale rescinded and the money paid by them returned. Clara, Anna, Ida and Theodore filed answer admitting the allegations relative to the $3,500 note, denying all charges of fraud, alleging that any relief prayed for had been barred by the laches of the plaintiff, and the statute of limitations, and that plaintiff is estopped by the adjudications in causes No. 15152 and No. 15340, wherein the title to the land in question was decreed to be in the seven children, or those holding under them. By an amendment to their answer, they allege that any claims which the plaintiff predicated upon the giving of the mortgage for $38,200, have been lost to him since the mortgage and indebtedness secured were barred by the statute of limitations prior to the final release of the mortgage. Edwin, Randolph, and the widow and children of Alvin made no defense.

On February 7, 1939, through her attorney, Mary O. Kallem filed in cause No. 15340 a disclaimer of any interest whatsoever in the 175 acres, and on June 28, 1939, she filed another disclaimer sworn to by her, in which she confirmed the authority of her attorney to file the earlier disclaimer, and again disclaimed any interest in this land, and stated that she never had claimed any rights therein as the surviving widow since the execution of the deed to Edwin and Alvin.

The trial court entered judgment and decree on October 30, 1939, as indicated in the foreword of this opinion. Under the judgment and decree in the consolidated trial in causes No. 15152 and No. 15280, affirmed in this court, any share in the 175 acres to which Edwin might be entitled, could be subjected to the judgment of the appellee, Lakin. It also appears from the record before us, that he had obtained a transfer of all interest of Ruth Kallem, the widow of Alvin, and had established his claim against his estate. The chief issue before us is whether Mary O. Kallem has an interest in the 175 acres which may be subjected to the payment of the appellee-Lakin's claim.

I. After a careful consideration of this extensive and complicated record, it is our conclusion that the trial court was

in error in rendering such judgment and decree in favor of this appellee.

Cause No. 15152 was an action at law against the mother and Edwin, the surviving makers of his note, and against Clara and Anna, the titleholders of the 175 acres under the deed of October 9, 1931. He asked judgment on the note and an attachment because of the fraudulent transfer. An attachment was levied upon any interest of either Edwin or his mother in the land. Judgment on the note was entered against Edwin, and the attachment was retained unimpaired to permit the plaintiff to bring a suit in equity to set aside the deed to the girls. He brought this equitable action to set aside the deed and to determine the title to the land, but he did not make the mother a party. He alleged that Edwin and Alvin were the real owners of the land, and that they made the transfer to the girls with the intent to hinder, delay and defraud their creditors, particularly the defunct Ellsworth bank and himself. He was seeking to defeat and set aside the title of the grantees in the deed of October 9th, and he should then have asserted and had determined every ground, of which he had knowledge, that would have entitled him to a favorable decree. He then knew, as his testimony establishes, of the claimed fraudulent transfers of September 1922, and that the deed by which the grantors in the deed of October 9, 1931, conveyed was, as he testified, "fictitious," and that if that were true the grantees in the 1931 deed could have no title, even if there was no fraud in the latter transaction. However, he chose not to litigate that issue in the consolidated trial in causes No. 15152 and No. 15280, but sought to try his grounds piecemeal, and based his right of recovery solely upon the ground that the transfer was made to defraud their existing creditors. The court heard and determined the latter issue and decreed that the deed and contract should stand and that the grantees in the deed held title to the land solely in trust for the seven children and those claiming under them, thus effectively holding that the mother had no interest in the land. That decree has been affirmed by this court. He accepted the benefit of that decree insofar as it gave him any interest that Edwin might have, and by also accepting the option given him by the court of affirming or rejecting the

Thompson contract. In the causes on appeal, he sought again to relitigate the issue adjudicated in the former suit and the issue of the transaction of 1922, which he should have presented in the former trial. In that trial, he sought recovery upon the allegation that Edwin and Alvin were the owners, but fraudulently conveyed. In the present action, he has abandoned the claim that they were the owners, and asserts that the mother had never parted with her interest in the land, and that the deed, under which he alleged they were the owners, was at all times fictitious. He cannot be permitted to thus play fast and loose with the court. Having once urged upon the court that the two boys were the owners and had fraudulently conveyed, and the court having decreed that they were the owners, and that there was no fraudulent conveyance, and that the grantees held title as trustees for the seven children alone, the decree is res judicata as to each of the three matters, and none of them can be retried or redetermined in a later action. Especially is this true when the additional ground which he urges in the suits before us, that is, the invalidity of conveyance of September 1922, could and should have been presented for determination in the other suits. He is barred both by adjudication, and by estoppel. Without quoting from the numerous authorities which we believe fully support our position, we call attention to the following wherein the principle is discussed. Bagley v. Bates, 223 Iowa 836, 273 N. W. 924; Wheatley v. City of Fairfield, 221 Iowa 66, 264 N. W. 906; Bowen v. Bowen, 219 Iowa 550, 258 N. W. 882; Des Moines and Fort Dodge Railway Co. v. Bullard, 89 Iowa 749, 56 N. W. 498; Wolfinger v. Betz, 66 Iowa 594, 24 N. W. 228; 15 R. C. L., section 446, page 970; Merrifield v. Clark, 199 Iowa 171, 201 N. W. 563; 34 C. J. 811, section 1228; City of Fairfield v. Dashiell, 217 Iowa 474, 249 N. W. 236; Goodenow v. Litchfield, 59 Iowa 226, 9 N. W. 107, 13 N. W. 86; Citizens State Bank of Panora v. Snyder, 181 Iowa 11, 162 N. W. 6; Smith v. Cretors, 181 Iowa 189, 164 N. W. 338; In re Lyman's Estate, 227 Iowa 1191, 290 N. W. 537; Watson v. Richardson, 110 Iowa 698, 80 N. W. 416, 80 Am. St. Rep. 331; Black v. Miller, 158 Iowa 293, 138 N. W. 535. Language applicable to the appellee herein is used in Des Moines and Fort

Dodge Railway Co. v. Bullard, supra, a trial for the title to land, as follows [89 Iowa 749, 56 N. W. 498]:

"He was the plaintiff in the action, and neither he, nor those claiming under him, had any right to commence an action upon one claim of title, and pursue it to the end of final adjudication, * * * and then set up other causes of action in another suit, * * *."

II. We think the plea of the statute of limitations, and of laches is also good as against the appellee-Lakin's attempt to set aside the conveyance of September 22, 1922. Although he alleges that he did not discover the fraud until in 1938, the record shows otherwise. He testified:

"I knew about the deed the heirs had given the two boys, and of the $38,200 mortgage the boys had given to their mother. I knew it had been given to keep the Bournes from getting ahold of the estate. Randolph told me about it and perhaps Ed and Al. The deed and mortgage was given in 1922. It was shortly after that I knew about it. It might have been a year or two, or four or five years, I never bothered about that because I had confidence in the boys and knew they would pay if they could; if they couldn't it would be alright anyway. I understood the $38,200 mortgage was fictitious. I never talked with Mary O. Kallem or Ida Sanford. * * * I knew the boys were in hard circumstances and we would never press them and they knew that."

He knew the elder Kallem and was well acquainted with the entire family, and bought produce from the boys while they were operating the farm. If the deed and mortgage were fraudulent, he was not deceived and willingly acquiesced therein. He could have procured a judgment on the note, or a lien by attachment, many years ago, and have brought an action to set aside the instruments. Just when the original note matured does not appear, but it was renewed in 1930, more than five years after the execution and recording of the instruments, and after his knowledge thereof or of any fraud involved. He testified that there was no sale for land in 1922, but it was being held high by some, and that this land was probably worth $200 an

acre. There was little justification for such a high estimate in the light of conditions as they then or thereafter existed. This would make the land worth $35,000. There were already mortgages of $12,500 on the land. The assumption of an additional indebtedness of $38,200 by the two boys did not add to their financial stability. The Lakins had full knowledge of any fraud against them, but they did not see fit to take any legal steps to protect themselves. Lakin also admits that he knew of the deed of October 9, 1931. Of that transaction, he testified:

"This fraudulent deed had been talked over ever since it had been given * * *. It was a fraudulent deed, so Ed, Al and Randolph claimed. *It was no secret, everybody knew it.*"

Yet with this additional knowledge, he waited almost seven years longer, or a total of approximately fifteen years, before any action was taken to set aside the deed of 1922. He contends that he was not injured, nor advised of his injury, and that his cause of action did not accrue until the mother released the $38,200 mortgage in 1938. Just how he had been benefited during all the years by a mortgage which he states was fictitious is not clear. Fifty acres had been released from the mortgage many years before. The indebtedness matured in October 1927, and the statute of limitations had run against it in 1937. If the deed of 1922 was fraudulent, so also was the mortgage, and he knew of these facts shortly after their execution. Under the record presented to us, we must hold that any right of action on the part of Lakin to set aside the deed of September 22, 1922, is barred both by the statute of limitations and by his own laches.

For the reasons set forth herein, the judgment and decree appealed from is reversed, insofar as it adjudges and decrees that Mary O. Kallem has any right, title, or interest of any kind or from any source, in and to the 175-acre tract, more particularly described as the North half of the Southeast Quarter and the Northeast Quarter of the Southwest Quarter, all in Section 36, Township 87, Range 24, and the Northwest Fractional Quarter of the Southwest Quarter of Section 31, Township 87, Range 23, West of the 5th P. M. Hamilton county, Iowa, and insofar as it gives to the appellee, H. M. Lakin, any claim, right, lien or

judgment against any such alleged interest of Mary O. Kallem, in or to said land or any part thereof. In all other respects, the judgment and decree is affirmed, and the cause is remanded for entry of judgment and decree in conformity herewith.—Reversed in part, affirmed in part, and remanded.

HALE, C. J., and STIGER, SAGER, OLIVER, MILLER, and WENNERSTRUM, JJ., concur.

MITCHELL, J., concurs in the result.

GARFIELD, J., takes no part.