George A. Skinner,

*vs.*

Educational Pictures Securities Corporation, a corporation of the State of Delaware, Earle W. Hammons, Bruno Weyers, A. S. Kirkpatrick, M. Plant and Frederick Blackmore.

*New Castle, June* 18, 1925.

That order for subpœna required a copy of process to be sent by resigtered mail to non-resident defendants was no ground for complaint, since, as they were not otherwise served in a lawful manner, service by registered mail would avail nothing.

Subpœna must be served in one of ways prescribed by law.

In bill for accounting of officer of corporation, brought by stockholder, assuming that directors of corporation were proper formal parties, subpœna might be directed to them, though no relief was sought against them, since subpœnas would not preclude them from pleading to jurisdiction.

In bill for accounting of non-resident officer of corporation, brought by stockholder, corporation would not be restrained from transferring officer's stock, where court had no judrisdiction over officer and was powerless to restrain him from selling and transferring stock.

In bill for accounting of non-resident officer of corporation, brought by stockholder, corporation, which was in court, *held* entitled only to have its answers to interrogatories postponed until officer had been brought into court.

In bill for accounting of non-resident officer of corporation brought by stockholder, seeking purely a personal decree for payment of money with no service on officer, injunction seeking to hold officer's shares in corporation where they then were in his name for satisfaction of a possible decree would be denied.

Stock of officer of a resident corporation is in contemplation of law located in the State.

In bill for accounting of non-resident officer of resident corporation brought by stockholder, seeking purely a personal decree for payment of money with injunction restraining defendant from transferring his stock in corporation, and no service being had on defendant, court was without jurisdiction of defendant until such stock was seized in view of *Revised Code* 1915, §§ 3850, 3856, and then only to extent of property seized.

An equity court has no power to proceed against a non-resident after manner of foreign attachment at law.

Mesne process of attachment of property is unknown to Chancery practice in this State.

In bill for accounting of non-resident officer of corporation brought by stockholder, prayer for receiver would be denied, where property which he would take was not involved in the controversy. ·

In absence of statute, a receiver may be appointed only to preserve subject-matter of suit pending litigation.

In bill for accounting of non-resident officer of resident corporation brought by stockholder, commission for sequestration to compel defendant's appearance would be denied, in view of *Revised Code* 1915, §§ 3850, 3856, where neither personal nor substituted service had been had on defendant.

Sequestration to enforce appearance is not granted except where there is first a contempt in not obeying a subpœna which had been lawfully served.

*Revised Code* 1915, § 3856, relating to jurisdiction over non-residents, apparently confers jurisdiction over a nonresident defendant owning property in the State.

In bill for accounting of non-resident officer of resident corporation, seeking purely a personal decree for payment of money, order for publication of service under *Revised Code* 1915, § 3850, would be ineffectual as service on defendant until court had first acquired jurisdiction by seizure of property belonging to defendant, since no decree *pro confesso* could be based on it, nor commission for a sequestration to compel defendant's appearance be ordered on it.

Bill for an Accounting in which the defendant Hammons, as an officer and general manager of Educational Pictures Securities Corporation, is charged with various misconducts whereby the corporation has been defrauded in certain large sums of money. The bill is brought by a stockholder of the corporation in right of the corporation, and its object is to secure an accounting from Hammons and a personal decree against him for payment of the sum found due thereon.

Hammons is the owner and holder of 2313 shares of the common stock of the defendant corporation. He is a non-resident of Delaware.

·    On the filing of the bill, the complainant obtained a rule for a preliminary injunction to show cause why Hammons should not be enjoined from transferring, and the corporation from permitting to be transferred, the shares of stock held by Hammons as afore-

said, and a restraining order to like affect was issued pending a hearing on the rule.

Since the argument on the rule, the complainant has moved in the alternative for a commission of sequestration, or writ of attachment, or a receiver, or such other process as may be deemed appropriate to hold the property of Hammons until he shall have appeared in this suit, or until the court shall make other order to the contrary.

Various motions have been made by the several defendants. They are as follows:

The defendant, corporation, which has appeared generally, moves to vacate so much of the order heretofore made as (a) restrains it from transferring on its books the shares of stock held by Hammons, (b) requires it to file affidavits on the rule for injunction, and (c) requires it through its secretary to answer interrogatories annexed to the bill of complaint. The motion is based on the ground that Hammons is the principal defendant and is beyond the jurisdiction of this court, that the relief against the corporation is only incidental or ancillary to the relief against Hammons, which is primary, and that inasmuch as the primary relief cannot be had against Hammons because of a lack of jurisdiction over him, the discovery from the corporation sought by the interrogatories cannot be had.

The defendants, Weyers, Kirkpatrick, Plant and Blackmore, who have appeared specially, move to vacate the order of service made as to them because no relief is prayed against them, the court has no jurisdiction over them, they being non-residents and no cause against them being set forth in the bill, and the statutes of this State do not warrant service upon them by publication.

The remaining defendant, Hammons, who has appeared specially, moves to vacate so much of the order heretofore entered as (a) directs the issuance of a subpœna against him and a sending of the same to him by registered mail, (b) restrains him from assigning and transferring his shares of stock, (c) directs a rule upon him for preliminary injunction to like effect with the usual provision for affidavits, and (c) requires him to answer the interrogatories addressed to him and annexed to the bill. This motion is

based on the ground that Hammons is a non-resident, beyond the jurisdiction of this court, that no cause is set forth in the bill giving this court jurisdiction and power to restrain or enjoin him from selling, etc., his shares of stock or any other property located in this State, and that the order for service of the subpœna by registered mail is in violation of the statute.

*James I. Boyce*, for the complainant.

*Caleb S. Layton*, of the firm of Marvel, Marvel, Layton and Hughes, for the defendants.

THE CHANCELLOR. The order for subpœna was that the same should be issued to the defendants and that the Register should "also" send a copy of the process by registered mail to the non-resident defendants. The direction that copies of the subpœna should be sent by registered mail to the non-resident defendants does not mean that such mailing would constitute a valid service. The subpœna must be served in one of the ways prescribed by law. Supplementing lawful service by the use of the mails is of no injury to a defendant. If he is not otherwise served in lawful manner, the registered mail will avail nothing. The mailing of a copy of the subpœna is done *ex gratia*. How can an attempt to give the defendants more notice than the law exacts, raise a just complaint from those who are thus favored?

The individual defendants, other than Hammons, are directors of the defendant corporation. No relief is sought against them. They are not indispensable, nor perhaps necessary parties. Whether they are proper formal parties, was not debated at the argument. Consideration of Hammons and his situation crowded this question from any attention during the discussion. If the individual defendants, other than Hammons, desire at this stage to press their contention that they are improperly joined, I prefer to hear further from the solicitors upon the point. In the absence of further argument, their contention will be rejected, with the right reserved to them to renew the point at a later stage. Assuming them to be proper formal parties, there is no reason why subpœnas may not be directed to them. Issuance of subpœnas does not preclude them from pleading to the jurisdiction, and there is therefore no reason why the order for subpœna should be vacated.

The corporate defendant objects to being restrained from transferring Hammons' stock, because the court has no jurisdiction over Hammons and being powerless to restrain him from selling and transferring it, the corporation ought not to be restrained from making a transfer on its books. This turns on the rights of Hammons and, for the reasons given in disposing of Hammons' motion, is a good objection. The restraining order directed to the corporation will therefore be vacated and the rule for preliminary injunction discharged.

The corporation also objects that it ought not to be required to answer the interrogatories because the primary relief against Hammons must fail for want of jurisdiction against him. It is too early to say that Hammons will never appear. His present attitude indicates that he will not. But it is too soon to say conclusively that service can never be had upon him, or that he will never voluntarily appear. The most, therefore, that the corporation, which is in court, can reasonably ask is that its answers to the interrogatories be postponed until after the principal defendant against whom the sole primary relief is sought has been brought into court. It may have an order to this effect.

The questions remaining to be disposed of concern Hammons. He is a non-resident. The bill is for an accounting and seeks a purely personal decree for the payment of money. It in no wise concerns or relates to the shares of stock which Hammons owns; it sets up no equity against those shares. The only possible interest that the complainant can have in those shares is that in case a decree is made against Hammons, the corporation might resort to them in satisfaction, so far as possible, of the sum found to be owing by their owner. The only purpose, therefore, which the injunction that is now sought can serve, is to hold the shares where they now are, in Hammons' name, so as to be available for satisfaction of a possible decree. In *Cities Service Co. v. McDowell, et al.*, 13 *Del. Ch.* 109, 116 *Atl.* 4, it was observed that the writ of injunction could not be used for such a purpose. No authority has been cited which indicates the ruling in that case to be unsound. It determines the disposition which is to be made of the present rule, and an order will accordingly be entered dis-

charging the rule for a preliminary injunction and vacating the restraining order.

The temporary injunction being denied, the complainant's motion for alternative temporary relief will be disposed of. He asks for a commission of sequestration, or a writ of attachment, or a receiver or some other appropriate process, whereby Hammons' stock shall be sequestered, attached, or taken and held until he shall have appeared in answer to the bill.

Our *Revised Code of* 1915, in *Section* 3850, provides , as follows:

"3850.   *Section 7.   Order for Appearance, upon Failure of Service and Affidavit; Publication of; upon Default, Decree pro Confesso; Enforcement by Sequestration or Delivery of Property Demanded; Payment upon Security for Restitution; Proceedings if Security Not Given.*—If after subpœna, or other process, issued and delivered to the sheriff twenty days before the return thereof, any defendant named therein shall not appear according to the rules of the court, the court may, on affidavit that such defendant is out of the State or cannot be found to be served with process, and that there is just ground to believe that he intentionally avoids such service, make an order for his appearance on a certain day, and publish such order in one or more newspapers. as the Chancellor shall direct. And if the defendant shall not appear, after such publication, according to such order, the court may order the plaintiff's bill to be taken *pro confesso*, and may thereupon issue process to compel the performance either by sequestration of the real and personal property of such defendant or part thereof, sufficient to satisfy the plaintiff's demand, or by causing possession of the estate, or effects, demanded by the bill, to be delivered to the plaintiff or otherwise as the case requires. And the court may also order the plaintiff to be paid his demand out of any property so sequestered upon his giving approved security, in a sufficient sum, to abide any order of the court for the restitution thereof upon the defendant's appearing to defend the suit, and paying such costs as the court shall order. If such security be not given, the property sequestered, or whereof possession shall be decreed to be delivered, shall remain under the direction of the court in the hands of a receiver, or otherwise, until the defendant's appearance, or until such order shall be made therein as the court shall think just."

A later section in the same chapter of the *Code* provides, as follows:

"3856.   *Section 13.   Proof of Absence and Previous Residence Necessary; When; Exceptions.*—The preceding sections shall not warrant any proceeding against a person out of the State, without proof, by affidavit, that he had been a resident in the State within one year next before the subpœna issued in such suit or unless the said process be returned duly served, or unless the suit is brought against a person out of the State for injunction to stay a suit at law,

or to be relieved against a judgment, or proceedings, at law by any such person out of the State, or unless the said suit shall be against a person seised, or in possession of any estate, real, or personal, within the State, or shall relate to, or concern, or affect, any such estate or property, rights, or credits, or any contracts made, or to be performed within the State."

The clause in *Paragraph* 3856 which is relied on as warranting the view that this court has jurisdiction over Hammons and that he may be effectively served with process in the cause, is the one which reads—"unless the said suit shall be against a person seised, or in possession of any estate, real, or personal, within the State." The present suit is against such a person, for Hammons is possessed of personal property located within this State. His stock in the defendant Delaware corporation is, in contemplation of law, located here. *Bouree, et al., v. Trust Francais, etc., Co., ante p.* 332.

In the leading case of *Pennoyer v. Neff*, 95 *U. S.* 714, 24 *L. Ed.* 565, a statute of Oregon, undistinguishable in its pertinent provisions from our own, was under consideration. In that case a personal judgment for a sum claimed as attorney's fee had been obtained after service of a summons by publication upon a non-resident who happened to own real property in the State of Oregon. The statute provided, as it does here in substance, that service might be made by publication "when the defendant is a non-resident of the State, but has property therein," etc. The Supreme Court held that the mere existence of property in the State owned by a non-resident could give the resident courts no jurisdiction to render a personal judgment against the owner. Had the property been seized under attachment process, it would have been competent for the local court to proceed to judgment, in which case the action would have been in the nature of an action *in rem* against property over which jurisdiction was unquestioned. The judgment, however, would have been valid to the extent only of the attached property.

In *Pennoyer v. Neff, supra,* substituted service is recognized as sufficient, not only in cases where the property of the non-resident is seized as in attachment proceedings, but also in cases "where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract

or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public service. In other words," says the court, "such service may answer in all actions which are substantially proceedings *in rem*. But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam*, constructive service in this form upon a non-resident is ineffectual for any purpose." The language of this excerpt would appear to justify service by publication in those cases where, as our *Paragraph* 3856 in one of its clauses in part provides, the suit "shall relate to, or concern, or affect any such estate or property * * * within the State."

In the instant case, however, as before noted, the object of the bill is not of this sort. It does not seek to reach and dispose of Hammon's stock, or of any interest therein; it seeks to impose no lien or charge upon it, nor to impress upon it any equity by way of trust or otherwise. It does not concern an estate or property in this State. It seeks a purely personal decree for the payment of such money as is alleged to be due and will appear from an accounting.

In such a case the doctrine of *Pennoyer v. Neff, supra,* denies the power of the court to proceed unless jurisdiction is obtained by a seizure of the property and then only to the extent of the property seized. The necessity of giving to this bill the character of a suit *quasi in rem* in order to support the jurisdiction is doubtless the reason for the alternative motions for a receiver, etc. There being nothing in the nature of the suit which can give it an *in rem* aspect, the necessity arises of securing some process whereby property may be seized by the court and a basis supplied for the jurisdiction predicated on physical possession or control by the court.

The difficulty with such a procedure in the instant case is that the law has provided for no writ or process for its accomplishment. The writ of foreign attachment supplies such a procedure in law actions. But no similar remedy has been introduced by our statutes into the Chancery practice of this State. Nor is any such remedy, so far as I am advised, to be found in the ancient English Chancery practice, from which our own is derived. There would

seem to be no doubt that it would be competent for the legislative power of the State to confer upon this court a power to proceed against non-residents after the manner of foreign attachment at law. But it has not as yet done so.

The complainant contends that there is some process of some kind within the powers of this court which may effectively be used to compel the defendant Hammons to appear. What he suggests are well recognized features in equity procedure. These remedies, however, have certain established uses to which they may be put. No authority has been cited which indicates that any of them can be so employed as to serve the familiar purpose of a mesne attachment at law.

The impropriety of the use of the injunctive process for this purpose has already been adverted to.

Another of the remedies asked for is a writ of attachment. The only attachment known to equity is for contempt. The mesne process of attachment of property is unknown to Chancery practice in this State.

In the alternative, a receiver is asked for. In the absence of a statute, a receiver may be appointed only for the purpose of preserving the subject-matter of the suit pending the litigation. In this case the property which the receiver would take is not involved in the controversy.

If neither of these remedies is available, then the complainant asks for a commission of sequestration. Sequestrations are of two types, viz.: One to compel an appearance and the other to enforce a decree. The sequestration here asked for is of the former type. It cannot be granted. A sequestration to compel an appearance, as the process is known to the English Chancery practice, is the culmination of several preceding steps. The first step is the obtaining of service of the subpoena. Then follow in turn the attachment for contempt; upon a return of *non est inventus*, an attachment with proclamations; if this is returned *non est inventus*, then a commission of rebellion issues; and if a like return is made to the commission, an order for a sequestration issues, after which the bill may be taken *pro confesso*. This is the old English practice and our statute has modified it to the extent of abolishing the proclamation and commission of rebellion.

There can never be a sequestration to enforce appearance, as here requested, except there first be a contempt in not obeying a subpœna, which has been lawfully served. The defendant here has never been personally served. The complainant, of course, contends that lawful service upon Hammons can be had by publication under provisions of *Sections* 3850 and 3856, *supra.* Even so, such substituted service has not yet been had. The first requisite, therefore, for the ordering of a commission of sequestration, has not been met. The motion for such a commission will therefore be denied.

The last alternative which the complainant suggests is "some other process." What "other process" there is which is known to equity procedure is not suggested, nor do I know of any that would be appropriate.

Jurisdiction over non-resident defendants owning property in this State is apparently conferred by *Section* 3856 of the *Code.* That paragraph appears to have been originally enacted in 1806. At that time *Pennoyer v. Neff* had not been decided, and the Legislature of this State, like that of Oregon, doubtless assumed that it was constitutionally empowered to enact the provision in question. This probably explains its existence in our law. If, however, the Legislature meant by the paragraph in question to provide for equity a remedy similar to that of an attachment at law, a very doubtful supposition, it failed to provide adequate machinery for its enforcement.

Since the argument, the complainant has moved for an order of publication under *Section* 3850 of the *Code, supra.* For the reasons hereinbefore given, such publication would be ineffectual as service upon the non-resident defendants. No decree *pro confesso*, as provided by the section, could be based on it, nor, because of its invalidity as service, could a commission for a sequestration to compel appearance be ordered upon it. Publication would be in vain, and the motion therefor will accordingly be denied. The only way the complainant can bring the non-residents into court in a cause of this type is to procure personal service of the subpœna.

Orders disposing of the various motions will be entered in accordance with the foregoing.