The reasons upon which the moving defendants advance in support of their motions are:
1. That the sequestration or seizure was made without due process of law.
2. That the Chancellor is without power or jurisdiction to make such an order..
3. That the Chancellor is without power to make such sequestration or seizure.
4. That said sequestration or seizure is not according to law.
The act under which the seizure is sought to be justified is found in chapter 217, vol. 35, Laws of Delaware, approved April 12, 1927. The act is an amendment of paragraph 3850, § 7, of the Revised Code of 1915. The said paragraph, as amended by the Act of April 12, 1927, reads as follows:
"3850, Sec. 7. Orders for Appearance; upon Failure of Service andAffidavit; Publication of; upon Default; Decree Pro Confesso;Enforcement by Sequestration or Delivery of Property Demanded; Paymentupon Security for *Page 784 
Restitution; Proceedings if Secured not Given; ForeignAttachment: — If, after subpoena or other process issued, any defendant therein named shall not appear in obedience to said process and according to the rules of the Court, the Court may, on affidavit that such defendant is out of the State, and cannot be found to be served with process and that there is just ground to believe that he intentionally avoids such service, make an order for his appearance on a certain day and give notice of such order as the Chancellor shall direct. And if the defendant shall not appear, after such notice, according to such order, the Court may order the plaintiff's bill to be taken pro confesso, and may thereupon issue process to compel the performance either by sequestration of the real and personal property of such defendant or part thereof, sufficient to satisfy the plaintiff's demand, or by causing possession of the estate, or effects, demanded by the bill, to be delivered to the plaintiff, or otherwise, as the case requires. And the Court may also order the plaintiff to be paid his demand out of any property so sequestered, upon his giving approved security, in a sufficient sum, to abide any order of the Court for the restitution thereof upon the defendant's appearing to defend the suit, and paying such costs as the Court shall order. If such security be not given, the property sequestered, or whereof possession shall be decreed to be delivered, shall remain under the direction of the Court in the hands of a receiver or otherwise, until the defendant's appearance, or until such order shall be made therein as the Court shall think just.
"If it shall appear in the bill of complaint that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, the Chancellor shall have power to compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Chancellor to pay the demand of the complainant, if the defendant shall not appear, or shall otherwise default. Such property shall remain subject to said seizure and may be sold to satisfy any decree made in the cause, unless security sufficient to the Chancellor shall be given to secure the release thereof. The Chancellor shall have power to make all necessary rules respecting the form of process, the manner of issuance and return thereof, the release of such property from seizure and for the sale of the property so seized. Any transfer or assignment of the property so seized as aforesaid after the seizure thereof shall be void and after the sale of said property is made and confirmed the purchaser shall be entitled to and have all the right, title and interest of the defendant in and to the property so seized and sold and such sale and confirmation shall transfer to the said purchaser all the right, title and interest of the defendant in and to said property as fully as if the defendant had transferred the same to the purchaser in accordance with law."
Section 3850 before amendment except for some minor variations not necessary to mention was practically the same as is the first paragraph of the section as just quoted. The last paragraph of the quotation constitutes new matter which the Legislature added by its enactment of April 12, 1927. In other words, what the act of 1927 did was to re-enact the provisions of section 3850 practically as they were and add thereto new provisions which are embodied in the second paragraph of the section as quoted above.
The new provisions were enacted in order to obviate the effect of the decision of this court in the case of Skinner v. Educational Pictures Corp. et al., 14 Del. Ch. 417, 129 A. 857. That case was decided in 1925. It held that there was no jurisdiction in the Court of Chancery of this State to proceed by way of foreign attachment against the property of non-resident defendants in a cause wherein a purely personal decree for money was the relief sought.
To obviate the consequences of the decision in that case the Legislature at its next succeeding session enacted the amendment to section 3850 above quoted. The part of the revamped section which was designed to meet the result of the Skinner Case is found in the second paragraph of the section as quoted supra.
The moving defendants, pointing to the history of the legislation, make the point that the new portion of the section under which the seizure was ordered is to be construed as covering only those cases falling in the same category as the Skinner Case which, as stated, was the provoking cause of its enactment, that is to say, to those cases only where a money decree is sought. The language of the amendment itself, it is argued, is clearly confirmatory of what its history thus indicates, for the section contemplates a sale of the seized property to pay the demand of the complainant. The seizure of property of a non-resident under the amendment is for the purpose of compelling an appearance in the first instance. If the defendant does not appear, or shall otherwise default, then the "property may be sold under the order of the Chancellor to pay the demand of the complainant, * * * and may be sold to satisfy any decree made in the cause, * * * the purchaser shall be entitled to and have all the right, title and interest of the defendant in and to the property so seized and sold and such sale and confirmation shall transfer to the said purchaser all the right, title and interest of the defendant in and to said property as fully as if the defendant had transferred the same," etc.
From these provisions, it is argued, that the proceeding by way of seizure of property of non-residents must be confined to cases where the eventual outcome to which the case looks is a possible sale. This would seem to be so. If it were not, what would be the result in a case where the object of the suit was to secure not a money demand, but specific property in the hands of the defendant? If the court had effected a seizure of the property and the defendant continued to shun the jurisdiction, what would the court *Page 785 
do with the property in its custody? The only final disposition of the property which the amendment authorizes is a sale thereof to satisfy the complainant's demand. But if the complainant's demand is for something not compensable by the money proceeds of a sale, what then should the court do with the seized property? It would seem the only thing it could do would be to release it. Now, it is hardly to be thought that the Legislature ever contemplated that the procedure it authorized should be used in a case that turned out in that fashion. The seizure it contemplated was certainly meant to be productive of some worth-while result. Unless it be confined to cases where a sale is necessary to render effectual the nature of the relief which the complainant's bill seeks, I am of the opinion that the new provisions of the amended section 3850 cannot be properly invoked.
It is now in order to turn to the facts which the bill in the pending case discloses with the view of determining.whether or not they are such as, if relief be granted, a sale is necessary for its effectuation.
In brief the bill recites the story of a joint adventure by numerous persons, the complainant and most of the defendants, to promote the construction of a toll-bridge over San Francisco Bay. The profits in the form of stock were to be divided among the associated promoters in certain designated proportions. The stock representing the profits was issued to Noon and Deuel. It consisted of 120,000 shares of San Francisco Toll-Bridge Company. The bill charges that Noon and Deuel, "instead of distributing the stock * * * according to the terms of the joint adventure," transferred all of it to San Francisco Bridge Securities Corporation, a corporation of this State, which has issued, or intends to issue, in exchange therefor its entire common stock of 120,000 shares to voting trustees, defendants herein, who in turn have issued or intend to issue trust certificates to certain of the joint adenturers to the fraudulent exclusion of the complainant and certain others of his associates. The bill therefore seeks a decree determining the respective interests of the parties and that the shares found to be due to the complainant may be decreed to him.
The shares of stock in controversy constitute res located in this State. Bouree et al. v. Trust Francais, etc., 14 Del. Ch. 332,127 A. 56. The case is in effect one which seeks a partition of personal property located here in accordance with the respective interests of the parties claimant as the same may appear. If the complainant satisfactorily supports his bill by proof, the decree which would be entered should give him the stock he claims. The stock is available and there could be no occasion for a sale. It would appear therefore that the case is not one which calls for resort to the new procedure created by the amendment to section 3850 enacted April 12, 1927. The order for sequestration will accordingly be vacated and the stock seized thereunder will be directed to be released.
This does not mean that the complainant is without relief in this court. Section 3850, before amendment, when read in connection with section 3856, supplies a method of procedure where the suit is against a non-resident defendant (section 3850) and relates to, concerns and affects personal property within the State (section 3856). The case of Skinner v. Educational Pictures Corp. et al., supra, recognizes this.
In view of the foregoing, it is unnecessary to consider the question of whether or not the new procedure provided for by the 1927 amendment to section 3850 offends against the due process clause of the Federal Constitution or its equivalent in the State Constitution. Neither is it necessary to discuss the other questions raised at the argument.
 An order will be prepared accordingly. *Page 786