MARGARET FEARS BLUMENTHAL,

*vs.*

ALFRED C. BLUMENTHAL, MIRIAM ROGERS and POLI-NEW ENGLAND THEATRES, INC., a corporation of the State of Delaware.

*New Castle, January 29, 1944.*

*Aaron Finger*, of the firm of Richards, Layton & Finger, for complainant.

*John J. Morris, Jr.*, and *W. Reese Hitchens*, of the firm of Hering, Morris, James & Hitchens, (Stillman & Stillman, of New York City, of counsel), for Alfred C. Blumenthal and Miriam Rogers.

HARRINGTON, Chancellor: The complainant seeks to set aside an alleged fraudulent transfer of certain shares of stock in a Delaware corporation by Alfred C. Blumenthal, and to subject them to the payment of debts, alleged to be due her from Blumenthal. She alleges that the transfer was without any fair consideration, made Blumenthal insolvent, and was for the purpose of hindering and delaying her in the collection of his indebtedness; and that in equity he is the real owner thereof.

In contemplation of law, the situs of stock issued by a Delaware corporation is in this State; *Section* 73 of the *General Corporation Laws, Rev. Code* 1935, § 2105, so provides. See *Skinner v. Educational Pictures, etc., Corp.*, 14 *Del.Ch.* 417, 129 *A.* 857; *Wightman v. San Francisco Bay Toll Bridge Co.*, 16 *Del.Ch.* 200, 142 *A.* 783.

The complainant's bill is, therefore, in the nature of an equitable execution, for the seizure of property located here (*Provident Trust Co. v. Banks*, 24 *Del.Ch.* 254, 9 *A.2d* 260; *Bouv. Law Dict., Rawle's 3rd Revision,* 726); and, as an incident to the relief sought, she seeks to set aside the alleged fraudulent transfer and obstruction to the collection of the debts due her. 4 *Pom.Eq.Jr.*, (*5th Ed.*) § 1415; 5 *Pom.Eq. Jur.*, (*2d Ed.*) § 2310. The jurisdiction of equity to entertain suits in aid of creditors in such cases, had its origin in the narrowness of the common law remedies by writs of execution. 4 *Pom.Eq.Jur.*, (*5th Ed.*) § 1415; 5 *Pom.Eq.Jur.*, (*2d Ed.*) § 2296; *Provident Trust Co. v. Banks, supra.* Originally, the use of such writs, besides being otherwise somewhat limited in their operation, was confined to the seizure of those estates and interests, recognized by the law courts, and did not extend to rights and interests purely equitable in their nature. 4 *Pom. Eq. Jur.*, (*5th Ed.*) § 1415; *Provident Trust Co. v. Banks, supra,* They could be seized in equity by a creditor's bill. *Id.* So, when there was no adequate remedy at law, ordinarily property transferred in fraud of creditors could be reached in that court as assets of the assignor

(*Provident Trust Co. v. Banks, supra;* see also *Sussex Trust Co. v. Bacon,* 11 *Del.Ch.* 380, 102 *A.* 785) ; as to them, the transfer was void in the sense that they had the right to be placed in the same position as though it had never been made. 5 *Pom.Eq.Jur.,* (2*d Ed.*) § 2310; 24 *Amer.Jur.* 261; *Tate v. Hoover,* 345 *Pa.* 19, 26 *A.2d* 665; *In re Ortiz' Estate,* 26 *Del. Ch.* 436, 27 *A.2d* 368; see also *Rutherford v. Carr,* 99 *Tex.* 101, 87 *S.W.* 815; *American Trust Co. v. Kaufman,* 276 *Pa.* 35, 119 *A.* 749.

In the *Ortiz* case, the Vice-Chancellor points out that, though a fraudulent assignor cannot recover property so transferred, he cannot vest title in the assignee, free from the rights of defrauded creditors.

It is not denied that the inadequacy of the legal remedy sufficiently appears from the complainant's bill. Nor is it necessary to allege that the grantee participated in the fraudulent scheme of the grantor, or that she had notice of it. 37 *C.J.S., Fraudulent Conveyances,* § 364, *p.* 1196. The English statute of 13 *Elizabeth,* enacted in 1570, was merely declaratory of ancient equitable principles. 37 *C.J.S., Fraudulent Conveyances,* §§ 2, 4, 5, 56, *pages* 852, 853, 902. The rights of defrauded creditors, therefore, do not depend upon our Fraudulent Conveyance Act. § 6067, *Rev. Code* 1935.

The individual defendants were nonresidents, and were not personally served with process, but that was not necessary if *Section* 4374 *of the Revised Code of* 1935 is applicable. See 34 *C. J.* 1175; 37 *C. J. S., Fraudulent Conveyances,* § 337, *p.* 1172; *Englander v. Jacoby, et al.,* 132 *N.J.Eq.* 336, 28, *A.* 2*d* 292; *Cantor v. Sachs,* (1932) 18 *Del.Ch.* 359, 162 *A.* 73. The property sought to be reached by the complainant is within the jurisdiction of this court, and the proceedings is *quasi in rem* rather than *in personam. Provident Trust Co. v. Banks, supra; Englander v. Jacoby, et al., supra; Bouv. Law Dict., Rawle's 3rd Revision,* 726.

*Section* 4374, *Revised Code* 1935, provides:

(1) "If, after subpoena or other process issued, any defendant therein named shall not appear in obedience to said process and according to the rules of the Court, the Court may, on affidavit that such defendant is out of the State, or cannot be * * * served with process and that there is just ground to believe that he intentionally avoids such service, make an order for his appearance on a certain day and publish such order as the Chancellor shall direct not less than once a week for three consecutive weeks. And if the defendant shall not appear, after such publication, according to such order, the Court may order the plaintiff's bill to be taken pro confesso, and may thereupon issue process to compel the performance either by seizure of the real and personal property of such defendant or part thereof, sufficient to satisfy the plaintiff's demand, or by causing possession of the estate, or effects, demanded by the bill, to be delivered to the plaintiff, or otherwise, as the case requires. And the Court may also order the plaintiff to be paid his demand out of any property so seized, upon his giving approved security, in a sufficient sum, to abide any order of the Court for the restitution thereof upon the defendant's appearing to defend the suit, and paying such costs as the Court shall order. If such security be not given, the property seized, or whereof possession shall be decreed to be delivered, shall remain under the direction of the Court in the hands of a receiver or otherwise, until the defendant's appearance, or until such order shall be made therein as the court shall think just.

(2) "If it shall appear in the bill of complaint that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, it shall be lawful for the Chancellor to make an order directing such non-resident defendant or defendants to appear by a day certain to be designated. Such order shall be served on such non-resident defendant or defendants by mail or otherwise, if practicable, and shall be published in such manner as the Chancellor may direct, not less than once a week for three consecutive weeks. The Chancellor shall have power to compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Chancellor to pay the demand of the complainant, if the defendant shall not appear, or shall otherwise default. Such property shall remain subject to said seizure and may be sold to satisfy any decree made in the cause, unless security sufficient to the Chancellor shall be given to secure the release thereof. The Chancellor shall have power to make all necessary rules respecting the form of process, the manner of issuance and return thereof, the release of such property from seizure and for the sale of the property

so seized, and may require the plaintiff to give approved security to abide any order of the Chancellor respecting the said property. Any transfer or assignment of the property so seized as aforesaid after the seizure thereof shall be void and after the sale of said property is made and confirmed, the purchaser shall be entitled to and have all the right, title and interest of the defendant in and to the property so seized and sold and such sale and confirmation shall transfer to the said purchaser all the right, title and interest of the defendant in and to said property as fully as if the defendant had transferred the same to the purchaser in accordance with Law."

In serving process by substituted service, the complainant invoked the aid of the second paragraph of that section. By a species of equitable foreign attachment, it provides for an order for the appearance of the nonresident defendants by a designated day; for the service of such order by mail, or otherwise, "if practicable", and for its publication "in such manner as the Chancellor may direct, not less than once a week for three consecutive weeks"; for the "seizure of all or any part of" the defendant's property to compel appearance, and, under certain circumstances, the subsequent sale thereof to pay the complainant's "demand" if the defendant "shall not appear, or shall otherwise default."

Any transfer of the "property" by the defendant "after the seizure thereof shall be void"; and by any sale made by order of the court, the purchaser "shall be entitled to and have all the right, title and interest of the defendant in and to the property so seized and sold * * *."

The provisions of the 1929 amendment to *Section* 3850 *of the Revised Code of* 1915 (*Chap.* 268, *Vol.* 36, *Laws of Delaware*) are incorporated in *Section* 4374. That amendment was enacted after the decisions of this court in *Skinner v. Educational Pictures Securities Corporation,* 14 *Del.Ch.* 417, 129 *A.* 857, in 1925, and in *Wightman v. San Francisco Bay Toll Bridge Co.,* 16 *Del.Ch.* 200, 203 142 *A.* 783, in 1928, both of which pointed out certain defects in the prior statutory provisions relating to the service of process on nonresidents, embodied in the 1927 amendment (*Chap.* 217, *Vol.* 35,

*Laws of Delaware*). Moreover, *Section* 3856 *of the Revised Code of* 1915, which seems to have been enacted long before *Pennoyer v. Neff*, 95 *U.S.* 714, 24 *L.Ed.* 565, was decided, was repealed by the 1929 amendment. (*Chap.* 268, *Vol.* 36 *Laws of Delaware*).

In *Skinner v. Educational Pictures Securities Corporation* [14 *Del. Ch.* 417, 129 *A.* 860] Chancellor Wolcott pointed out:

"There would seem to be no doubt that it would be competent for the legislative power of the state to confer upon this court a power to proceed against non-residents after the manner of foreign attachment at law. But it has not as yet been done."

Somewhat the same statement was made in *Wightman v. San Francisco Bay Toll Bridge Co.* The 1929 amendment (4374, *Rev. Code* 1935) followed these decisions. See *Cantor v. Sachs, supra.*

By motion, Miriam Rogers seeks to quash the alleged service to discharge the property seized, and to dismiss the bill as to her. Her motion is based on the theory that the relief sought is the determination of her right to the stock in controversy, and that she cannot be brought into court for that purpose, even in a case of this character, under the second paragraph of *Section* 4374.

The similar motion of Alfred C. Blumenthal is based on the theory that it appears from the allegations of the bill that no property belonging to him was seized by the sequestrator; that Miriam Rogers is the owner of the corporate stock in controversy. The only question involved is the application of the second paragraph of *Section* 4374. For the purpose of these motions, the facts alleged in the bill are necessarily admitted; and Miriam Rogers, at least, has misconceived the real purpose and nature of the action. She is an indispensable party, as she would be affected by a decree for the complainant (5 *Pom. Eq. Jur.*, (2d *Ed.*) § 234); but the effect on

her rights would merely be an incident to any relief given against Blumenthal.

The real controversy is not between the complainant and Miriam Rogers, with respect to the ownership of the corporate stock; but is whether Blumenthal has transferred property with the intent to defraud a creditor, and whether it continues to be an equitable asset of the assignor which can be seized and subjected to the payment of his debts. If the relief sought directly involved rights in property, as in *Wightman v. San Francisco Bay Toll Bridge Co.*, the second paragraph of *Section* 4374 would not be applicable to the service of process on Miriam Rogers; but very different relief is sought here, and the substituted service on her is valid.

Conceding that the statute must be constructed with some strictness, the word "property" has a broad and comprehensive meaning, including legal and equitable interests in both real and personal property. Miriam Rogers is the legal owner of the stock, and Blumenthal has no equitable rights therein, as between them; but it appears that the complainant is a defrauded creditor who stands in a very different position. As between her and Blumenthal, the latter had property rights in the stock, subject to seizure under the statute, which enabled valid substituted service to be had on him. Neither *Nye Odorless Incinerator Corporation v. Nye Odorless Crematory Co.,* 18 *Del. Ch.* 179, 156 *A.* 176, nor *Berwick v. Associated Gas & Electric Co.,* 20 *Del.Ch.* 265, 174 *A.* 122, supports Blumenthal's contention that no property belonging to him, even in equity, was seized by the sequestrator. Constructive fraud was alone involved in those cases. Applying the trust fund doctrine, both recognized the right of corporate creditors to follow and enforce rights, in the nature of so-called equitable liens on property in the hands of gratuitous assignees of the debtor. In the latter case, the Chancellor held that the nonresident corporate defendant was not a necessary party. In the former, the

complainant conceded that the Georgia nonresident corporate debtor was a necessary party defendant, and did not succeed in bringing it into court by the alleged seizure of the assigned property, which consisted of stock in a Delaware corporation. The Chancellor held that the stock seized was no longer an asset of the Georgia corporation and could not be seized as such by attachment; but there is nothing to indicate that the transfer was intended to defraud creditors. Moreover, the *Nye Odorless* case was cited by the Chancellor in the *Berwick* case, in discussing the trust fund theory.

In view of these conclusions, it is unnecessary to consider the demurrer of Miriam Rogers; it was only important if Blumenthal had not been legally served with process.

Both motions to quash are denied.

Note. Affirmed on appeal in *a percuriam* reported *post p.* 448.