THOMAS COOCH, Trustee,

*vs.*

FLORENCE C. GRIER, individually and as an Executrix under the Last Will and Testament of Frank L. Grier, deceased; FRANCIS G. WAKEFIELD, individually and as an Executrix under the Last Will and Testament of Frank L. Grier, deceased; HOWARD E. LYNCH, JR., as Executor under the Last Will and Testament of Frank L. Grier, deceased; HOWARD K. WAKEFIELD, MARY GRIER PRATT, JOHN LOCKWOOD PRATT, HAROLD C. GRIER and ELIZABETH JOSEPH GRIER.

*New Castle, April 24, 1948.*

*James R. Morford,* of the firm of Marvel & Morford, for plaintiff.

*William H. Foulk* and *Herbert L. Cobin,* for defendants Florence G. Grier, individually and as executrix, Frances G. Wakefield, individually and as executrix, Howard E.

Lynch, Jr., executor, Howard K. Wakefield, Mary Grier Pratt and John Lockwood Pratt.

*Vincent A. Theisen,* of the firm of Southerland, Berl & Potter, for defendant Elizabeth Joseph Grier.

SEITZ, Vice-Chancellor: I must determine whether laches prevents plaintiff from attacking certain alleged fraudulent conveyances.

The bill of complaint was filed on January 31, 1946, and a demurrer on behalf of all but two of the defendants was filed on March 1, 1946. Although this case was instituted before the new Chancery Court Rules took effect, I shall hereinafter designate the bill of complaint as the "complaint" and the demurrer as a "motion to dismiss". All but two of the defendants have appeared and moved to dismiss the complaint on the ground of laches. Unless otherwise indicated, the use of the term "defendants" herein will refer to all the moving defendants—who constitute the only real defendants.

After a long delay, the plaintiff amended his complaint, and the parties agreed that the motion to dismiss should stand to the complaint as amended. This is the decision of the court on the motion to dismiss the amended complaint on the ground of laches.[1]

Since the material factual allegations of the complaint as amended must be taken to be true for purposes of disposing of the motion to dismiss, it becomes necessary to narrate them at length.

The complaint alleges that on or about April 7, 1928, George H. Draper, Jr., commenced an action at law in the Superior Court of New Castle County, Delaware, against

[1] Other grounds for dismissing the complaint were set forth in the motion to dismiss, but since the defense of laches was the only one which was argued or briefed, the opinion will be confined to that ground. I do not here decide whether laches may be raised by a motion to dismiss under the new Chancery Court Rules.

one Harold C. Grier charging Grier with alienating the affections of Draper's wife. The defendant was served personally and appeared in the cause by counsel and participated in the jury trial both personally and by counsel. On May 26, 1930, the jury returned a verdict in favor of Draper, and against Grier in the sum of $35,000. By agreement, a judgment was entered on the verdict on September 19, 1930, in the reduced amount of $12,000.

The lien of the judgment was renewed and continued by virtue of a judgment entered at the May Term 1942, in the Prothonotary's Office of New Castle County, Delaware. The judgment was also entered in the Superior Court for Sussex County, Delaware, at the October Term 1930. The judgment bears interest at 6% from September 19, 1930. No part of the judgment, interest, or costs has ever been paid.

On or about May 17, 1930—on the eve of the jury trial —Grier owned certain real estate in Rehoboth Beach, Sussex County, Delaware, which was unencumbered and was then and is now worth in excess of $20,000. He also owned 50 unencumbered shares of $100 par value second preferred 6% capital stock of L. D. Caulk Company, a Delaware corporation, which was and is worth in excess of $5,000, as well as an undivided interest in a real estate trust known as Title Insurance and Trust Company Trust No. 2534 which interest was worth approximately $4,500.

By an undated deed, Harold C. Grier and his wife, Elizabeth Joseph Grier, conveyed the Rehoboth real estate to Frank L. Grier, the father of Harold C. Grier. This deed was recorded in the office of the Recorder of Deeds for Sussex County at Georgetown, Delaware, on May 17, 1930. Since the complaint sets forth the deed record, I assume the court is entitled to consider the contents of the deed as part of the complaint. It appears from the recorded deed that the recited consideration was merely "One Dollar". At about the same time, Grier assigned and trans-

ferred to his father the 50 shares of the Caulk Company stock and his interest in the Title Insurance and Trust Company Trust. The transfers were all allegedly made on or about May 17, 1930.[2]

Plaintiff alleges that all three transfers were made without a fair or valuable consideration and were made for the purpose of removing a valuable asset of Grier from the reach of any judgment to be obtained by Draper in the then pending law action.

It is alleged specifically that the three conveyances were not given for "fair consideration"; that by the conveyances Grier was thereby rendered "insolvent"; that when Grier made the conveyances, he believed he was about to incur a debt beyond his ability to pay; and that Grier made the conveyances with an actual intent to defraud Draper, a potential and thereafter a creditor in fact of Grier. For the reasons enumerated, the conveyances are alleged to be fraudulent conveyances within the meaning of *Chapter 174* of the *Revised Code of Delaware*, 1935—being, in substance, the *Uniform Fraudulent Conveyance Act*.

The judgment debtor's father, Frank L. Grier, died on or about March 19, 1937, and up until that time was purportedly seized in fee simple of the Rehoboth real estate and purportedly the owner of the Caulk Company stock and the undivided interest previously owned by his son Harold in the Title Insurance and Trust Company Trust. Three of the moving defendants, Florence C. Grier, Frances G. Wakefield and Mary Grier Pratt, as the legatees and devisees named in the will of Frank L. Grier each became seized and possessed of an equal undivided one-third interest in all the estates and interests in the real and personal property transferred by Harold C. Grier and his wife to Frank L. Grier in 1930. These three defendants are

---

[2] An exhibit to the amended complaint would indicate that the trust interest was transferred on May 28, 1930—after the verdict.

the widow and daughters, respectively, of the alleged fraudulent grantee Frank L. Grier.

The plaintiff then alleges why there has been such a long delay in bringing this action, and because of its importance it will be quoted at length:

"14. On information and belief, the complainant further avers that until about the month of March, 1945, the said George H. Draper, Jr., understood and believed that the conveyance by the defendant Harold C. Grier and his then wife to the said Frank L. Grier, of said property Nos. 6 and 8 Pennsylvania Avenue, Rehoboth, was made for a "fair consideration" as said term is defined by Chapter 174 of the Revised Code of the State of Delaware, 1935, relating to the subject of Fraudulent Conveyances and that the same had not been made by the defendant Harold C. Grier with intent to defraud any present or future creditor; that the said George H. Draper, Jr., did not know until about the month of March, 1945, of the ownership by the defendant Harold C. Grier of said 50 shares of the second preferred stock of L. D. Caulk Company and his conveyance thereof about May of 1930 to the said Frank L. Grier; and that after the said George H. Draper, Jr., was informed of the fraudulent nature of said transactions about the month of March, 1945, he thereupon caused an investigation thereof to be made by his attorneys, whereby the several allegations of this bill of complaint were substantiated and verified; and that the complainant herein was not informed of the facts in respect of said Title Insurance and Trust Company Trust No. 2534 until the month of November, 1945 when said fact was accidentally discovered by his solicitors. Neither the complainant, as trustee under said indenture of May 10, 1945, Exhibit 'A', nor the beneficiaries of said trust agreement had any knowledge or information in respect of the matters and things herein alleged, except in consequence of the information obtained by the said George H. Draper, Jr., about the month of March, 1945, the investigation thereof made by the attorneys for said George H. Draper, Jr., and the further facts recently discovered as aforesaid by complainant's solicitors."

By the amendment to the complaint, it is recited that Draper's attorney first received information "which suggested the probable fraudulent nature of certain transactions which occurred between Harold C. Grier and his father Frank L. Grier, just prior to the trial of said lawsuit, was in the course of a telephone conversation between the deponent [attorney for Draper] and said Harold C. Grier,

which occurred shortly prior to March 30, 1945 and probably during late February or early March of that year." The amendment alleges that the telephone call was unsolicited and the information voluntarily offered. The information was subsequently verified by Grier upon a visit to the office of Draper's attorney. Thereafter, Grier gave a detailed written statement on March 30, 1945, in which he purported to explain the facts surrounding the transfers to his father. Incidentally, this was only as to the real estate and the Caulk Company stock and not as to the trust interest. He stated that the purpose of the Rehoboth Beach property conveyance was to protect his father who had endorsed his (Harold's) notes then aggregating $4,000., and who had paid the sum of $4,400. for him. The notes had been given to a bank to secure a loan which was used to aid in the erection of a house on the Rehoboth real estate. The statement recites that Grier had an oral understanding with his father that the property would be reconveyed when the indebtedness was paid off. The statement also recites that the Caulk Company stock was conveyed by Grier to his father in order to protect his father. It is stated, however, that the matter of reconveyance was never discussed, but Grier says he understood that he was to get the Rehoboth Beach property and the Caulk Company stock back when he paid off what was due his father. Finally, Grier states that the purpose of the conveyance of the Caulk Company stock and the Rehoboth Beach property to his father was to prevent Draper, if and when he obtained judgment, from collecting the judgment out of those assets.

The information with respect to Grier's transfer of the trust interest first came to plaintiff's attorney by a letter from his associate dated November 26, 1945.

The plaintiff alleges that the defendants herein have all had either full knowledge of the circumstances of the fraud, or acquired their interests under such circumstances that they are in equity chargeable with knowledge of their fraudulent nature. Plaintiff also alleges that in March of

1945, a bill of complaint with respect to the Rehoboth real estate transaction had been prepared for filing in this court, but was withheld by agreement with the defendants' attorneys with the understanding that the delay in filing would not be prejudicial.

The plaintiff asserts that at all times the judgment has constituted a lien at law and in equity on the real property conveyed and that the transfer was fraudulent and void as to Draper.

On May 10, 1945, Draper assigned his judgment to a trust created to receive it. The plaintiff brings this action as trustee of that trust.

Since plaintiff's right to any relief is challenged by the motion to dismiss, it is unnecessary to consider now the various types of relief requested by plaintiff.

The defendants move to dismiss the complaint because it appears on the face of the complaint that the judgment creditor (and therefore plaintiff) is guilty of laches in attacking the alleged fraudulent conveyances.

The plaintiff in the present action recognized that under *Martin v. Martin,* (*Del. Ch.* 1900) 74 *A.* 864, he was required to set forth in his amended complaint the facts which justified the judgment creditor's failure to act for a period of almost 15 years after the alleged fraudulent conveyances were made. Let us look to the allegations of the amended complaint to see whether facts are alleged which would excuse the long delay in instituting this action. I shall first consider the conveyance of the Rehoboth real estate.

I infer from the allegations of the amended complaint that the original judgment creditor, Draper—in whose shoes the present plaintiff stands—actually knew of the conveyance of the Rehoboth real estate by the judgment debtor to his father. There is no way of determining from the pleadings when he first knew of the conveyance, but I as-

sume that it is not unfair to infer from the language of the amended complaint that Draper knew of the conveyance at or about the time it was made. I draw these inferences particularly from the language in paragraph 14 of the complaint reading that "until about the month of March, 1945, the said George H. Draper, Jr., understood and believed that the conveyance by the defendant Harold C. Grier and his then wife to the said Frank L. Grier, of said property Nos. 6 and 8 Pennsylvania Avenue, Rehoboth, was made for a 'fair consideration' * * * and that the same had not been made by the defendant Harold C. Grier with intent to defraud any present or future creditor; * * *." Moreover, at the oral argument, I asked counsel whether it was a fair inference from the pleadings that Draper actually knew of the conveyance of the Rehoboth real estate at or about the time it was made, and there was no contention that such an inference would be improper. Plaintiff may, of course, amend his complaint to reflect his contention in this respect if my inference fails to reflect his true position.

The attorney for the plaintiff seeks to obviate the effect of this knowledge in Draper in 1930 by contending that neither Draper nor the present plaintiff nor their attorneys knew of the fraudulent nature of the Rehoboth Beach conveyance until some time in 1945. The court must decide, therefore, whether the then judgment creditor was entitled to assume the validity of the Rehoboth Beach conveyance and to take no action with respect thereto until he and his successor in title had procured the evidence as to its fraudulent nature which they now possess.

In my opinion the facts alleged to excuse the long delay do not have that effect. It has long been recognized that if circumstances exist which would reasonably put a creditor on notice as to the possible fraudulent nature of a transfer by his debtor, then he is under a duty to attack it promptly and he may not sit by and await proof positive before attacking the conveyance as fraudulent. Failure

so to do may render him guilty of laches. 37 *C.J.S., Fraudulent Conveyances,* § 351; 2 *Moore on Fraudulent Conveyances, p.* 864; see *Bank of Marlinton v. McLaughlin,* 121 *W. Va.* 41, 1 *S.E.2d* 251 (*dictum*).

What are the circumstances which I believe required the judgment creditor to attack the conveyance of the Rehoboth Beach property long before the present suit was instituted by his successor in interest? Not only was the conveyance recorded, but of vital importance, Draper actually knew of the conveyance at about the time it was made. Moreover, since he knew of the conveyance, he must also have known that the conveyance was made on the eve of the trial of his suit against the alleged fraudulent grantor. This is considered to be a badge of fraud. See 27 *C. J., Fraudulent Conveyances,* § 139; 39 *C.J.S., Fraudulent Conveyances,* § 82. Finally, the conveyance was to the fraudulent grantor's own father, and since the judgment creditor actually knew of the conveyance, it is also fair to assume that he knew of the relationship existing between the grantor and grantee. Such transactions will be closely scrutinized by the courts. *Richards v. Jones,* 16 *Del.Ch.* 227, 142 *A.* 832; *Glenn, Fraudulent Conveyances and Preferences,* (*Rev. Ed.*) § 307. Even if he did not actually know the nature of the relationship, it would seem that the identity of the surnames would give rise to suspicion. I have no doubt that all these facts, which I infer were known to the judgment creditor, plus the fact of a recited consideration of one dollar, when viewed cumulatively, imposed on him the duty to investigate the conveyance, if not to attack it. See *Kallem v. Kallem,* 229 *Iowa* 985, 295 *N.W.* 826. So far as the amended complaint shows, nothing at all was done.

The plaintiff's attorney insists that the judgment creditor had no evidence of fraud until 1945, and so could not have successfully attacked the conveyance prior to that time, since the deed recited a "valid consideration". The deed recited only a one dollar consideration, and I am unable to see how, as against a judgment creditor, this could

be considered as constituting a valid consideration. The contrary is true. Moreover, the facts about the Rehoboth real estate conveyance—all known to the judgment creditor —would have been sufficient in my judgment to shift the burden of proof to the grantee to prove that the conveyance was not fraudulent. See *Richards v. Jones, supra.*

The plaintiff's cause is burdened not only by the facts just narrated, but also by the changes which have occurred since the conveyance. The complaint itself indicates that the alleged fraudulent grantee apparently would have asserted an interest in the property which could have been tried had the conveyance been seasonably attacked. Since he died in 1937, the court can no longer hear the grantee's testimony as to the basis of the alleged fraudulent conveyance.

"It has been said that laches will apply where there is an unexplained delay in prosecuting the claim until death has closed the lips of the interested parties." *Thrasher v. Ocala Mfg. Ice & Packing Co.,* 153 *Fla.* 488, 15 *So.* 2*d* 32.

The fact that the grantee's testimony is unavailable assumes added importance when we realize that the discovery of the alleged fraud has come voluntarily from the fraudulent grantor—the judgment debtor—and has come subsequent to the time when he was left the sum of one dollar in his father's will. As the Supreme Court of West Virginia said in *Mitchell v. Cornell,* 88 *W.Va.* 194, 106 *S.E.* 866, 868, in sustaining a defense of laches to a bill attacking a fraudulent conveyance:

"It may be that if this suit had been brought within a reasonable time a full and satisfactory explanation could have been made of all these transactions."

The plaintiff's attorney asserts, however, that "in no event will the equitable doctrine of laches· be applicable, by way of defense, to any attempt by the creditor to assert his lien and, where, as here, the creditor is, in effect, asking Chancery's sanction before taking the step, laches is no defense." Without deciding whether plaintiff has a lien

against the Rehoboth real estate, I conclude that when an action is commenced in this Court of Chancery to set aside a fraudulent conveyance, the plaintiff's cause is subject to the usual equitable defenses whether the action is brought under *Paragraph 6067 of the Revised Code of Delaware, 1935,* being *Section 9* of the *Uniform Fraudulent Conveyance Act,* or whether the action is premised on the historical jurisdiction of the court in such cases. See *Blumenthal v. Blumenthal,* 28 *Del. Ch.* 1, 35 *A.* 2d 831, 834, affirmed by a *per curiam* opinion of the Delaware Supreme Court filed February 26, 1945, 28 *Del. Ch.* 448, 59 *A.* 2d 216. In a suit to set aside a fraudulent conveyance, the right to assert the defense of laches was undisputably established in this state prior to the enactment of the *Uniform Fraudulent Conveyance Act.* See *Martin v. Martin, supra.* Since *Section 9* of the *Uniform Fraudulent Conveyance Act,* insofar as it permits a creditor to have the conveyance set aside or the obligation annulled to the extent necessary to satisfy a creditor's claim, is but declaratory of the pre-existing law in this state, see *Blumenthal v. Blumenthal, supra,* and see *Atlantic Lumber Corporation v. Waxman,* 162 *Md.* 191, 159 *A.* 593, it would seem to follow that the defense of laches is still available where plaintiff seeks relief in the Court of Chancery. No other statute has been suggested as altering this result. I conclude, threfore, that the defense of laches has been properly raised and considered here, and I deem it unnecessary to decide what plaintiff's rights would be were he to attack this conveyance elsewhere.

It appears from the facts alleged in the amended complaint that there has been such an inexcusable and prejudicial delay in attacking the conveyance of the Rehoboth real estate that the defense of laches must prevail.

A somewhat different and more serious problem is posed with respect to the transfer of the Caulk Company stock and the interest in the Title Insurance and Trust Company Trust. Until about March 1, 1945, the judgment creditor, Draper, did not know that the defendant Grier

once owned the Caulk Company stock and conveyed it to his father in May of 1930; nor did plaintiff or his predecessor in title know of the judgment debtor's ownership and transfer of the interest in the Title Insurance and Trust Company Trust until November of 1945. The defendants urge that the plaintiff and his predecessor in interest are also guilty of laches with respect to these two transactions. They point out that the Rehoboth property was, as the amended complaint alleges, worth in excess of the value of the judgment. Consequently, if the judgment creditor had seasonably attacked the conveyance of the real estate, he could, if successful, have procured full satisfaction of his judgment therefrom. Under these circumstances, it is urged that his successor in title ought not to be permitted to attack the personal property transfers, especially since the lips of the alleged fraudulent grantee are closed. Moreover, the judgment creditor actually knew of the real estate conveyance in 1930, and must also be chargeable with knowledge of its *prima facie* fraudulent nature, yet so far as the amended complaint shows, he never took any steps to investigate what other property the judgment debtor might have transferred under the same cloud.

It is most difficult to determine whether the doctrine of laches bars the plaintiff from attacking the personal property conveyances. It is made particularly difficult because the complaint alleges a fraudulent conveyance and a lack of knowledge prior to the time of suit. Yet the complaint also shows that the plaintiff's predecessor in title failed to attack the real estate transfer at a time when he could have required the alleged fraudulent grantee to assume the burden of demonstrating that the conveyance was not fraudulent. Now the only person who could adequately take up the burden—the alleged fraudulent grantee—is dead; yet he lived 7 years after the conveyance and was available to defend.

The parties have not cited in their briefs, nor have I been able to find any authorities on that point. I have finally resolved this most troublesome point in favor of the

defendants for the reasons which I shall now state. While it is true that the judgment creditor did not obtain actual knowledge of the ownership and transfer of the personal property until 1945, nevertheless, he actually knew of the real estate conveyance. He could have attacked the conveyance and, if successful, procured full satisfaction of his judgment. Should he now be penalized for this inexcusable delay by preventing him from attacking the personal property transfers? I conclude that he should when, as here, death has removed the alleged fraudulent grantee from the scene and when the grantee could have defended the action had the real estate transfer been attacked with reasonable promptness. Substantial opposing equities are here at war, but in my opinion the requirement of due diligence must carry the day.

An additional basis for weighing the scales in favor of the defendants is demonstrated by the failure of the judgment creditor to make any investigation or take any action to see whether the judgment debtor had transferred any other assets. Since he knew of the suspicious real estate conveyance, it is not unreasonable to assume that he must have entertained a suspicion that other property might have been transferred under the same cloud. Yet, so far as the complaint shows, he did absolutely nothing. To the extent that acquiescence can be said to constitute an aspect of the doctrine of laches, it can be inferred here that the judgment creditor acquiesced in the transfer since he apparently was not interested in procuring the satisfaction of his judgment.

The cumulative effect of all the facts set forth in the amended complaint, and the fair inferences to be drawn therefrom lead me to conclude that the motion to dismiss on the ground of laches should stand to the entire amended complaint with leave granted plaintiff, if he so desires, to file an amended complaint within ten days after the entry of the order hereon.

An order accordingly will be advised on notice.